**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| PENGUIN RANDOM HOUSE LLC, LAURIE HALSE ANDERSON, JOHN GREEN, MALINDA LO, JODI PICOULT, SCOTT BONZ as parent and next friend of HAILIE BONZ, IOWA STATE EDUCATION ASSOCIATION, MARI BUTLER ABRY, ALYSON BROWDER, AND DANIEL GUTMANN, | ) ) ) ) ) ) ) ) | Case No. 4:23-cv-00478-SHL-SBJ |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| JOHN ROBBINS in his official capacity as President of the Iowa State Board of Education, MCKENZIE SNOW in her official capacity as Director of the Iowa State Department of Education, CHAD JANZEN in his official capacity as Chair of the Iowa State Board of Educational Examiners, URBANDALE COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS, ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent, NORWALK COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS, AND SHAWN HOLLOWAY, in his official capacity as Norwalk Community School District Superintendent, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| Defendants. | ) ) | |

The State Defendants assert that the First Amendment has no application to the removal of books from school libraries. This is contrary to law. The Court should enjoin the Age-Appropriate Standard.

The State Defendants concede that the Identity And Orientation Prohibition does not apply to noncurricular books. Subject to the State Defendants' agreement on the record that they will provide written confirmation to school districts of this position, the Court need not address Plaintiffs' arguments concerning that Prohibition.[1]

**1. Plaintiffs Have Standing.**

Despite the State Defendants' perfunctory assertions (*see* Resistance, ECF 45 at 7, 26), all Plaintiffs have standing.[2] For a First Amendment claim, the "standing inquiry is lenient and forgiving," particularly as to "injury-in-fact." *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022). Because they seek injunctive relief, Plaintiffs need only demonstrate that one party has standing to pursue the parties' claims. *See Rumsfeld v. Forum for Acad. & Inst'l Rights., Inc.*, 547 U.S. 47, 52 n.2 (2006).

- PRH publishes and distributes books that Iowa school districts have removed or will imminently remove from school libraries under SF 496. Publishers like PRH have standing to challenge laws that limit or burden the distribution of their publications. *See Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) ("[T]here is no question that publishers who wish to communicate with those who, through subscription, willingly seek their point of view have a legitimate First Amendment interest in access to [readers]."); *Prison Legal News v. Livingston*, 683 F.3d 201, 213 (5th Cir. 2012) (holding that the First Amendment protects the right of distributors of information to provide materials to readers who have not

---

[1] On December 20 Plaintiffs requested the State Defendants' agreement but have not yet received that agreement.

[2] Because SF 496 threatens to chill First Amendment activity, Plaintiffs also have standing to challenge SF 496 on behalf of others. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988) ("[I]n the First Amendment context," litigants may challenge a statute not only "because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.").

solicited those materials.); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64, n.6 (1963) (holding that creation of state commission that notified distributors that certain books were "objectionable" for sale to youth and notified law enforcement of such books violated the First Amendment).

- The Authors similarly have standing to challenge restrictions on their right to communicate their messages through their books. *See Parents, Families, & Friends of Lesbians and Gays, Inc. v. Camdenton R-III School District*, 853 F. Supp. 2d 888, 896-97 (W.D. Mo. 2012) (digital publishers (authors of internet content) had standing to challenge software that blocked access to their websites in school libraries because the software prevented them from communicating to students).

- Hailie Bonz, and therefore her father as next friend, has standing because SF 496 prevents her from accessing school library books that she intended to read and from reading or discussing removed books without stigma. *See Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 998-99 (W.D. Ark. 2003) (burden on student's right to check out school library books is an Article III injury).

- The individual Educators have standing because they must remove books from their school libraries based on vague prohibitions in SF 496 or face significant penalties, including losing their jobs and teaching licenses. *See Fayetteville Pub. Libr. v. Crawford Cnty., Arkansas*, --- F. Supp. 3d ----, Case No. 5:23-CV-05086, 2023 WL 4845636, at *9 (W.D. Ark. July 29, 2023) (holding librarians possessed standing to challenge library book restriction where they faced penalties for failure to comply).

- ISEA, an association of educators, has standing because (1) its members would "otherwise have standing to sue in their own right," (2) it seeks to protect interests that are "germane to the organization's purpose," and (3) its claims and the injunctive relief it seeks do not require the participation of its members. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

**2. Plaintiffs' Motion For Preliminary Injunction Is Timely.**

The State Defendants suggest that Plaintiffs' motion to enjoin SF 496 is untimely, both late (because Plaintiffs "did not challenge the law until November 30, 2023,") and early (because discipline for violations of SF 496 would purportedly not occur until after various procedural steps). (Resistance, ECF 45 at 7.) The State Defendants are incorrect.

Plaintiffs' request for preliminary relief was not delayed. Iowa did not release proposed regulations that purported to interpret and give definition to the relevant statutory language until November 15, 2023. The State Defendants concede that the regulations are relevant by relying on

them.  (*Id.* at 15.)  Following the issuance of those regulations, which did not cure SF 496's infirmities, Plaintiffs promptly filed their Complaint on November 30, 2023 and moved for a preliminary injunction only eight days later, on December 8, 2023.  There was no delay.

Nor is Plaintiffs' motion premature.  In preparation for SF 496's January 1, 2024 effective date, Iowa school districts have started to remove books from school library shelves, causing First Amendment harm to PRH, the Author Plaintiffs, and Hailie Bonz.  *See, e.g.*, *Counts*, 295 F. Supp. 2d at 999 ("The loss of First Amendment rights, even minimally, is injurious.").  Further, the State Defendants' suggestion that a request for relief from the Educators must come after enforcement is baseless.  Plaintiffs who risk punishment need not wait to undergo enforcement proceedings prior to seeking relief.  *See, e.g.*, *Fayetteville*, 2023 WL 4845636, at *9 (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. at 393).

### 3.  The Government Speech Doctrine Does Not Apply To School Libraries.

The State Defendants' attempted defense of the Age-Appropriate Standard boils down to one argument:  that the First Amendment has no application whatsoever in school libraries.  Every court that has ruled on this argument has rejected it, including in decisions in the past year[3] and by federal district courts[4] and circuit courts[5] throughout the country.

Ignoring every decision in which their argument was rejected, the State Defendants rely

---

[3]  *Book People, Inc. v. Wong*, No. 1:23-CV-00858-ADA, 2023 WL 6060045, at *14 (W.D. Tex. Sept. 18, 2023); *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *7 (W.D. Tex. Mar. 30, 2023); *Fayetteville Pub. Libr.*, 2023 WL 4845636, at *20.

[4]  *E.g.*, *Counts*, 295 F. Supp. 2d at 1004; *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547-48 (N.D. Tex. 2000); *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 874-75 (D. Kan. 1995); *Scheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 686-89 (D. Me. 1982); *Salvail v. Nashua Bd. of Ed.*, 469 F. Supp. 1269, 1272–73 (D.N.H. 1979); *Right To Read Def. Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 710 (D. Mass. 1978).

[5]  *Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184, 188-89 (5th Cir. 1995); *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582 (6th Cir. 1976).

upon the narrow government speech doctrine.  The government speech doctrine applies only where (1) the state has historically "communicated messages" through the medium; (2) the medium is "closely identified in the public mind" with the state such that the government "has endorsed that message," and (3) the state directly controls "the messages conveyed" through that medium.  *See Walker v. Texas Div., Sons of Confederate Veterans, Inc*., 576 U.S. 200, 210-13 (2015); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 472-73 (2009).  The State Defendants do not cite the governing three-part test for government speech.

Collections of books in school libraries do not satisfy any of the three factors.  First, school libraries have not historically communicated messages from the state.  Instead, school libraries have long served as vehicles to expose students to a broad array of ideas and messages from authors who express unique, personal points of view.  *See, e.g.*, Plaintiffs' Brief at Ex. A ¶ 10 (ECF 29-2 at 6-7); Urbandale Board Policy Regulation 0631A-R(1)-R(1).  *See also Gerlich v. Leath*, 861 F.3d 697, 708 (8th Cir. 2017) (holding that there was no government speech where the university program in question "was capable of accommodating a large number of public speakers without defeating the essential function" of the program and explaining that permitting speech by hundreds of organizations did not "communicate any message to the public" from the university); *Roach v. Stouffer*, 560 F.3d 860, 868 (8th Cir. 2009) ("[T]he wide variety of available specialty [vanity license] plates further suggests that the messages on specialty plates communicate private speech.").

Second, contrary to the requirement that government speech be a message that is endorsed by the state, messages conveyed in school library books are diverse and contradictory.  *See, e.g.*, Iowa Admin. Code r. 281-12.3(256) (requiring that Iowa school library programs "include a current and diverse collection of fiction and nonfiction materials").  It would be absurd for the

State Defendants to claim that by including the *Bible*, the *Torah*, the *Koran*, *Mein Kampf*, the *Communist Manifesto*, or the *Sayings of Chairman Mao* in a school library, the State of Iowa has endorsed those messages. As Justice Alito has explained, the government speech doctrine does not extend to speech that expresses "contradictory views." *See Matal v. Tam*, 582 U.S. 218, 236 (2017) (explaining that the government-speech doctrine is "susceptible to dangerous misuse")[6]; *Shurtleff v. City of Boston*, 596 U.S. 243, 272-73 (2022) (Alito, J., concurring) (explaining that "flags flown [from a city flagpole] reflected a dizzying and contradictory array of perspectives that cannot be understood to express the message" of the city); *see also Gerlich*, 861 F.3d at 708 (explaining that government speech doctrine did not apply to programs that include "groups that have opposite viewpoints from one another"); *Roach*, 560 F.3d at 868 (similar).

Third, the State of Iowa does not "maintain[] direct control over the messages conveyed" in school library books. *See Walker*, 576 U.S. at 213. Rather, authors and publishers control the contents of their books. The State does not "dream up" the books or "edit [books] submitted for" inclusion in school libraries. *See Matal*, 582 U.S. at 235. *See also Shurtleff*, 596 U.S. at 256 (explaining that the "most salient feature" of the case was the defendant's failure to "control[] the flags' content and meaning"); *Roach*, 560 F.3d at 864 ("[T]he more control the government has over the content . . . the more likely it is to be government speech.").

No court has found that school library collections constitute government speech because there is no plausible argument that collections of library books deliver "a government-controlled message." *See Summum*, 555 U.S. at 468.

The only case upon which the State Defendants rely for their government speech argument

---

[6] The Court in *Tam* also explained that *Walker*, concerning state specialty license plates, "marks the likely outer bounds of the government-speech doctrine." *Id*. at 235.

that has anything to do with libraries is a case about the use of internet filtering software to block images that constitute obscenity or child pornography in public libraries. *See United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194 (2003) (plurality) ("*ALA*"). Contrary to the State Defendants' suggestion, that case did not rule that library collections are government speech; it did not even mention the government speech doctrine. Instead, the Supreme Court held in *ALA* that "[i]nternet access in public libraries is neither a 'traditional' nor a 'designated' public forum," *id.* at 205, which is not at issue in this case, and it cited a case addressing an "analogous context[]" that was a nonpublic forum. *Id.* at 204 (citing *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998)).[7] The Court also recognized libraries' "traditional missions of facilitating learning and cultural enrichment" and highlighted the "broad discretion" of librarians – not the state – "to decide what material to provide to their patrons." *Id.* at 195, 204. This Court should reject the State Defendants' baseless attempt to apply the government speech doctrine to school libraries.[8]

### 4. The State Defendants Misleadingly Compare The Unconstitutional Age-Appropriate Standard To Iowa's Obscenity Law That Adopts The *Miller* Test.

While ignoring the constitutional requirement that books be evaluated as a whole, the State Defendants make the misleading argument that the Age-Appropriate Standard is consistent with Iowa's obscenity standard:

> [I]t reflects other Iowa law that has long forbade "dissemination and exhibition of obscene materials to minors." Iowa Code § 728.2. "Obscene materials" includes the same definition of "sex acts" used in SF496.

---

[7] As explained in Plaintiffs' Brief (ECF 29-1 at 27), at a minimum, school libraries are nonpublic forums.

[8] The State Defendants cite two decisions from district courts in Missouri concerning school district policies that defer to school librarians to evaluate whether particular challenged books should be removed from school libraries. (Resistance, ECF 45 at 16.) Neither decision supports the Age-Appropriate Standard, which is a content-based restriction that takes authority away from school librarians, prohibiting them from considering the age of the reader and the value of the books as a whole.

(Resistance, ECF 45 at 14.)  To the contrary, Iowa's longstanding obscenity law illustrates the difference between a constitutional content-based restriction and a blatantly unconstitutional content-based restriction.  That law's definition of "obscene material" is substantially similar to the Supreme Court's *Miller* test as applied to minors:

> any material depicting or describing the genitals, sex acts, masturbation, excretory functions or sadomasochistic abuse which the average person, taking the material as a whole and applying contemporary community standards with respect to what is suitable material for minors, would find appeals to the prurient interest and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political or artistic value.

Iowa Code § 728.1(5).  *See Miller v. California*, 413 U.S. 15, 24 (1973) (holding that obscenity is "limited to works" that (a) "taken as a whole, appeal to the prurient interest in sex," (b) "portray sexual conduct in a patently offensive way," and (c) "taken as a whole, do not have serious literary, artistic, political, or scientific value").  The State Defendants note that like Iowa's obscenity law, the Age-Appropriate Standard "includes" the definition of "sex acts" from Iowa's Criminal Code, section 702.17.  But the State Defendants ignore that unlike this longstanding law, the Age-Appropriate Standard **omits** each of the three required components of the *Miller* test.

The State Defendants also misleadingly rely upon several declarations that have no relevance to this case.  This case does not concern provisions of SF 496 relating to pronouns, student surveys, or books used as part of the curriculum, and therefore Defendants' Exhibits A, B, D, F, G, and J have no relevance to Plaintiffs' claims.  Nor is this case about "delegating to parents the role of deciding when their children should be exposed to explicit materials."  (Resistance, ECF 45 at 14.)  Rather, the Age-Appropriate Standard removes authority from parents and their children who are students, imposing a uniform prohibition regardless of the parents' or students'

views, the value of the book as a whole, or the age of the reader.[9]

**5.  The State Defendants Agree That The Identity And Orientation Prohibition Does Not Apply To Noncurricular Books.**

Despite Iowa educators' requests for guidance concerning the applicability of the Identity And Orientation Prohibition to noncurricular books since enactment of SF 496, the State remained silent on the scope of the Prohibition until filing its Resistance in this case.  The State Defendants now concede that the Prohibition "does not apply to noncurricular books on library shelves"; rather, the Prohibition applies only to "the compulsory school environment" of "curriculum or instruction."  (Resistance, ECF 45 at 19.)

Plaintiffs agree that this concession "resolves their claim" (*id.*) so long as the State Defendants agree to issue written guidance to Iowa school districts expressly stating that SF 496's Identity And Orientation Prohibition does not apply to noncurricular books.[10]

## CONCLUSION

Senate File 496's Age-Appropriate Standard violates Plaintiffs' First Amendment rights. For the reasons set forth above and in Plaintiffs' Motion and Brief, the Court should enjoin enforcement of the Age-Appropriate Standard.  Subject to the State Defendants' agreement on the record that they will provide written confirmation to Iowa school districts that the Identity And Orientation Prohibition does not apply to noncurricular books, Plaintiffs will dismiss Counts IV through VII of their Complaint.

---

[9]  Iowa school districts have policies and procedures that enable parents to regulate their own children's library use.  *See, e.g.*, Urbandale Board Policy Exhibit 0631B-E(1); Urbandale Board Policy 0631C.

[10]  Defendant Norwalk Community School District must also agree to return any noncurricular books that it removed due to the Identity And Orientation Prohibition.

Dated:  December 21, 2023

THE WEINHARDT LAW FIRM

By  /s/ Mark E. Weinhardt
Mark E. Weinhardt        AT0008280
Todd M. Lantz             AT0010162
Jason R. Smith            AT0014862
2600 Grand Avenue, Suite 450
Des Moines, Iowa  50312
Telephone: (515) 244-3100
mweinhardt@weinhardtlaw.com
tlantz@weinhardtlaw.com
jsmith@weinhardtlaw.com

Frederick J. Sperling
Adam J. Diederich
Kirstie Brenson
Meera Gorjala
ArentFox Schiff LLP
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606
Telephone: (312) 258-5500
frederick.sperling@afslaw.com
adam.diederich@afslaw.com
kirstie.brenson@afslaw.com
meera.gorjala@afslaw.com
(admitted *pro hac vice*)

*Attorneys for Plaintiffs*

Christy A.A. Hickman   AT0000518
Becky S. Knutson        AT0004225
Katherine E. Schoolen   AT0010031
Iowa State Education Association
777 Third Street
Des Moines, Iowa 50309
Telephone:  (515) 471-8004
Christy.Hickman@isea.org
Becky.Knutson@isea.org
Katie.Schoolen@isea.org

*Attorneys for the Educator Plaintiffs*