# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | | |
|---|---|---|
| PENGUIN RANDOM HOUSE LLC, LAURIE HALSE ANDERSON, JOHN GREEN, MALINDA LO, JODI PICOULT, SCOTT BONZ as parent and next friend of HAILIE BONZ, IOWA STATE EDUCATION ASSOCIATION, MARI BUTLER ABRY, ALYSON BROWDER, AND DANIEL GUTMANN, | ) ) ) ) ) ) ) ) | Case No. 4:23-cv-00478-SHL-SBJ |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| JOHN ROBBINS in his official capacity as President of the Iowa State Board of Education, MCKENZIE SNOW in her official capacity as Director of the Iowa State Department of Education, CHAD JANZEN in his official capacity as Chair of the Iowa State Board of Educational Examiners, URBANDALE COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS, ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent, NORWALK COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS, AND SHAWN HOLLOWAY, in his official capacity as Norwalk Community School District Superintendent, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendants. | ) ) | |

Plaintiffs Penguin Random House LLC, Laurie Halse Anderson, John Green, Malinda Lo, Jodi Picoult, Scott Bonz as parent and next friend of Hailie Bonz, Iowa State Education Association, Mari Butler Abry, Alyson Browder, and Daniel Gutmann, by their attorneys, for their Complaint against Defendants John Robbins in his official capacity as President of the Iowa State Board of Education, McKenzie Snow in her official capacity as Director of the Iowa State Department of Education, Chad Janzen in his official capacity as Chair of the Iowa State Board of

Educational Examiners, Urbandale Community School District Board Of Directors, Rosalie Daca in her official capacity as Urbandale Community School District Superintendent, Norwalk Community School District Board Of Directors, and Shawn Holloway in his official capacity as Norwalk Community School District Superintendent, state as follows:

## INTRODUCTION

1.      The First Amendment ensures that authors can communicate their ideas to students without undue interference by the government.  "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them.  In most circumstances, the values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213–14 (1975).

2.      The right to speak and the right to read are inextricably intertwined.  Just as authors have the right to communicate their ideas to students without undue interference from the government, students have a corresponding right to receive those ideas.  Publishers and educators connect authors to students.  If the government dislikes an author's idea, it can offer a competing message.  It cannot shut down the marketplace of ideas.

3.      This action concerns whether Iowa may enforce the parts of the recently enacted Senate File 496 that require the removal of books from school libraries and classroom collections. Senate File 496 forces teachers and school librarians to remove books, some of which have been on shelves for decades, or face penalties, including termination of their employment.  The text of Senate File 496 is attached as Exhibit A.

4.      This action solely concerns the portions of Senate File 496 that require the removal of books from school libraries and classroom collections in violation of the First and Fourteenth Amendments to the United States Constitution.  This lawsuit does not challenge any of the numerous other provisions of Senate File 496.

5.      Senate File 496 requires the removal of fiction and non-fiction books alike, depriving Iowa students from encountering literature that portrays and describes critical aspects of the human experience.

6.      Rather than defer to trained professionals, such as teachers or librarians, to determine which books are appropriate for school libraries and classroom collections, Senate File 496 automatically prohibits two categories of books.

7.      First, under the pretext of protecting students from "pornography," Senate File 496 prohibits books in school libraries and classroom collections that contain a description or visual depiction of a "sex act."  This restriction applies to all grades, kindergarten through twelfth grade, without consideration of the book as a whole, only excepting religious books.  By so broadly regulating the display and availability of books that are constitutionally protected as to at least a significant number of students, this standard violates the First and Fourteenth Amendments because it is an impermissible content-based restriction, restricts access to constitutionally protected books, and is unconstitutionally vague.

8.      Second, a portion of Senate File 496 also appears, and is being interpreted by Iowa school districts, to prohibit books in school libraries and classroom collections that "relate" to "gender identity" or "sexual orientation."  This sweeping prohibition defines gender identity and sexual orientation so broadly that the prohibition could apply to all gender identities and any depiction of a romantic relationship.  This prohibition violates the First and Fourteenth

Amendments because it is an impermissible content-based restriction and is unconstitutionally vague.  In practice this prohibition appears to have been intended to apply, and has been applied, to remove only books containing LGBTQ+ themes or characters or those written by authors within the LGBTQ+ community.   Therefore, this prohibition also violates the First and Fourteenth Amendments because it discriminates against LGBTQ+ viewpoints and authors.

9.      Plaintiffs bring this action to safeguard their fundamental rights and the rights of their members and other persons under the First and Fourteenth Amendments to the U.S. Constitution (a) to disseminate and have others read constitutionally protected books, (b) to receive and read constitutionally protected books, and (c) to avoid being required either to remove constitutionally protected books from school libraries and classroom collections or to be terminated as a teacher or school librarian.

10.     Plaintiffs seek to preliminarily and permanently enjoin enforcement of, and declare unconstitutional and void, the portions of Sections 1, 2, 4, and 16 of Senate File 496 that apply to school libraries and classroom libraries as violations of their rights under the First and Fourteenth Amendments.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action is brought under 42 U.S.C. § 1983 and seeks to vindicate civil rights protected by the First and Fourteenth Amendments to the U.S. Constitution.

12.     Venue is proper under 28 U.S.C. § 1391(b) because multiple Defendants reside in this district, all Defendants are residents of the State in which this district is located, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and is occurring in this district.

**PARTIES**

13.    Plaintiff Penguin Random House LLC ("PRH"), a Delaware Limited Liability Company headquartered in New York, is the U.S. arm of Penguin Random House, the world's largest trade publisher, which comprises more than 300 editorially and creatively independent publishing imprints globally.

14.    Due to Senate File 496, many books published by PRH have been targeted for removal (on lists created by school districts) or removed from school district libraries and classroom collections in Iowa, including *Beloved* by Toni Morrison; *Song of Solomon* by Toni Morrison; *The Bluest Eye* by Toni Morrison; *Last Night at the Telegraph Club* by Malinda Lo; *Ulysses* by James Joyce; *As I Lay Dying* by William Faulkner; *Push: A Novel* by Sapphire; *Breathless* by Jennifer Niven; *The Fault in Our Stars* by John Green; *Looking for Alaska* by John Green; *The Handmaid's Tale* by Margaret Atwood; and *I Know Why The Caged Bird Sings* by Maya Angelou.  References to books published by PRH include books originally published by PRH's predecessors.

15.    PRH's mission is to ignite a universal passion for reading by creating books for everyone and creating a world where independent thinking, free expression, and creativity flourish. PRH aims to publish books that provide children with a gateway to the whole world, promoting literacy, fostering empathy, and inspiring free and open debate.  Continued inclusion of its books in public school libraries and classroom collections is critical to PRH's mission, especially for books intended for elementary and young-adult readers.

16.    Plaintiffs Laurie Halse Anderson, John Green, Malinda Lo, and Jodi Picoult (the "Author Plaintiffs") are authors whose books have been targeted for removal or removed from school libraries and classroom collections throughout Iowa as a result of Senate File 496.

17.     Plaintiff Laurie Halse Anderson resides in Pennsylvania.  She has authored ten novels.  Her novels have been selected for many best-of lists, including in the *New York Times*, in *Publishers Weekly*, and on the American Library Association's (ALA) Amelia Bloomer List.  Her novels have also been recognized by the International Reading Association, the New York Public Library, the Young Adult Library Services Association (YALSA), and the Junior Library Guild.  She has won the ALA Margaret A. Edwards Award, the Anne V. Zarrow Award, the Scott O'Dell Award for Historical Fiction, and the Astrid Lindgren Memorial Award during her distinguished career.

18.     Anderson's book *Speak* is a young adult fiction novel based on Anderson's personal experience of having been sexually assaulted as a teenager and the resulting trauma.  *Speak* explores themes of identity, finding one's voice, trauma, and healing by reclaiming the narrative.  *Speak* won the Golden Kite Award and a Michael Printz Honor and was named as a finalist for the Edgar Allen Poe Award, the *Los Angeles Times* Book Prize, and the National Book Award for Young People's Literature.  *Speak* was also named an ALA Best Book for Young Adults and listed in the ALA's Top Ten Best Books for Young Adults.  At least fourteen Iowa school districts have determined that Senate File 496 requires that *Speak* be removed from school libraries and classroom collections.

19.     Plaintiff John Green resides in Indiana.  He is the author of seven novels.  His novels have sold more than fifty million copies in print worldwide, and his novel *The Fault in Our Stars* is one of the best-selling books of all time.  Green has won the Edgar Alan Poe Award, the Corine Literature Prize, the Children's Choice Book Awards, the Guardian's Children's Fiction Prize, the Uruguayan Premio Bartolomé Hidalgo for "Best children's Youth [Book] by a foreign Author," and the Young Reader's Choice Award, among others, during his illustrious career.

20.     Green's book *Looking for Alaska* is a coming-of-age school story and teen romance about a boarding school student who is bullied.  The *New York Times* bestselling novel won the ALA's Michael L. Printz Award and was a finalist for the *Los Angeles Times* Book Prize.  *Looking for Alaska* featured on the ALA's Top Ten Best Book for Young Adults, the YALSA's Teen's Top Ten Award, and the ALA's Quick Pick for Reluctant Young Adult Readers.  It has been named a New York Public Library Book for the Teen Age, a Booklist Editor's Choice Pick, and a Borders Original Voices Selection.  At least eighteen Iowa school districts have determined that Senate File 496 requires that *Looking for Alaska* be removed from school libraries and classroom collections, including Defendant Urbandale Community School District.

21.     Plaintiff Malinda Lo resides in Massachusetts.  She is a *New York Times* bestselling author of seven novels, all of which are about queer girls.  Lo's novels have been selected for many best-of lists, including the ALA's Best Fiction for Young Adults, the ALA's Rainbow List, Bank Street College's Best Children's Books, the Locus Recommended Reading List, and the James Tiptree Jr. Longlist.  Lo has been honored by the Carnegie Corporation as a Great Immigrant.

22.     Lo's novel *Last Night at the Telegraph Club* is a historical coming-of-age novel set in 1950s San Francisco about a Chinese American girl named Lily Hu who discovers her identity as a lesbian.  *Last Night at the Telegraph Club* won the National Book Award, the Stonewall Book Award, the Asian/Pacific American Award for Literature, and a Michael L. Printz Honor, and it was an *LA Times* Book Prize finalist.  At least seven Iowa school districts have determined that Senate File 496 requires that *Last Night at the Telegraph Club* be removed from school libraries and classroom collections, including Defendant Urbandale Community School District.

23.     Plaintiff Jodi Picoult is a resident of New Hampshire.  She has authored 28 novels that have been translated into 34 languages and sold approximately forty million print copies

worldwide.  Picoult's novels have been selected for many best-of lists, including by the *New York Times*, *Publishers Weekly*, and YALSA.  She has won the New England Bookseller Award for Fiction, YALSA's "Alex Award," the Vermont Department of Libraries' "Green Mountain Book Award," the Maryland Association of School Librarians' "Black-Eyed Susan Award," Romance Writers of America's "Lifetime Achievement Award" for mainstream fiction, and the Sarah Josepha Hale Award Medal during her venerable career.

24.     Picoult's book *Nineteen Minutes* centers on a school shooting, demonstrating the devastating ramifications of failing a child who has been "othered."  Through Peter Houghton, who has been mercilessly bullied for most of his life, and Josie Cormier, who is being physically and sexually abused by her boyfriend, *Nineteen Minutes* shows that marginalization can take many different forms.  *Nineteen Minutes* debuted at #1 on the *New York Times* bestseller list.  At least 24 Iowa school districts have determined that Senate File 496 requires that *Nineteen Minutes* be removed from school libraries and classroom collections, including Defendant Urbandale Community School District.

25.     For each Author Plaintiff, school libraries are a critical means of reaching their intended audiences and securing the broadest possible readership.  The Author Plaintiffs' books, including the books identified herein, are vehicles for their personal messages and ideas.  The removal of their books from school and classroom libraries, including the associated stigma, causes them harm, both personally and professionally.

26.     Plaintiff Scott Bonz (the "Parent Plaintiff") is an Iowa resident.  He is the father, next of friend, and general guardian of Hailie Bonz, a senior at Urbandale High School.  During the current school year Hailie wanted and intended to check out specific books from her school library, or her teachers' classroom libraries, that have been removed due to Senate File 496,

including *Looking for Alaska* by John Green; *The Color Purple* by Alice Walker; and *The Handmaid's Tale* by Margaret Atwood.  Scott Bonz wants Hailie to have access to these books, and others like them, among other reasons, so that she is presented with different viewpoints and experiences and, thus, better prepared to engage with a wide range of people.  Hailie wants to have access to these books, and others like them, for the same reasons.

27.     Plaintiff Iowa State Education Association ("ISEA") is a professional organization of educators dedicated to the mission of supporting and protecting quality public education "by placing our students at the center of everything we do while advocating for education professionals."  ISEA's goals include promoting learner-centered curricula for the development of the whole person and protecting the professional integrity of the educator.  ISEA represents teachers, librarians, and other education professionals who work in public school districts and schools throughout Iowa, including the Urbandale Community School District and the Norwalk Community School District.  Virtually all of ISEA's members are subject to Senate File 496.  ISEA members overwhelmingly support the preservation of academic freedom and oppose the provisions of Senate File 496 that have resulted in the removal of books from district libraries and classroom collections.  As a result of Senate File 496, many of ISEA's members, including teachers and school counselors, are being forced to remove books from their classroom collections or face penalties and expose their districts to penalties.  As a result of Senate File 496, many of ISEA's librarian-members are being forced to remove books from school libraries or face penalties themselves and expose their districts and administrators to penalties.

28.     Plaintiffs Mari Butler Abry, Alyson Browder, and Daniel Gutmann are Iowa educators and members of ISEA who, as a result of Senate File 496, are being forced to remove constitutionally protected books from their school libraries and classroom collections or expose

their districts, administrators, and themselves to penalties, including termination of their employment and sanctions against their licensure. Each is licensed by the Iowa State Board of Educational Examiners. Together with ISEA, Butler Abry, Browder, and Gutmann are referred to as the "Educator Plaintiffs."

29.     Plaintiff Mari Butler Abry is a resident of Iowa. She is the District Librarian for Perry Community School District for kindergarten through twelfth grade students. As a result of Senate File 496, Butler Abry has been required to remove books from school libraries, including *Looking for Alaska* by John Green and *13 Reasons Why* by Jay Asher, or to expose herself and her district to penalties. As a result, Butler Abry removed these books. In addition, several books in Perry Community School District's library for kindergarten through fifth grade students and its library for sixth through twelfth grade students have been targeted for removal or removed from school or classroom libraries within Iowa school districts due to Senate File 496. As a result of Senate File 496, Butler Abry will likely be forced either to remove additional books from school libraries or risk sanctions against her licensure and loss of employment, as well as penalties against her district and administrators.

30.     Plaintiff Alyson Browder is a resident of Iowa. She is a teacher in the Norwalk Community School District who teaches seventh grade English. As a result of Senate File 496, Browder has been required to remove books, including *Sold* by Patricia McCormick and *Water for Elephants* by Sara Gruen, or to expose herself and her district to penalties. As a result, Browder removed these books. Browder fears that other books that she makes available to students in her classroom collection may also be subject to removal due to Senate File 496. As a result of Senate File 496, Browder will likely be forced either to remove books from her classroom collection or

risk sanctions against her licensure and loss of employment, as well as penalties against her district and administrators.

31.     Plaintiff Daniel Gutmann is a resident of Iowa.  He is a teacher in the Des Moines Independent Community School District who teaches sixth, seventh, and eighth grade students. Gutmann has a collection of books in his classroom that he makes available to his students, some of which have been targeted for removal or removed from school or classroom libraries within Iowa school districts due to Senate File 496, including *Best At It* by Maulik Pancholy and *Pride: The Story of Harvey Milk and the Rainbow Flag* by Rob Sanders.  Gutmann fears that other books that he makes available to students in his classroom collection that are inclusive of LGBTQ+ themes and characters may also be subject to removal due to Senate File 496.  As a result of Senate File 496, Gutmann will likely be forced either to remove books from his classroom collection or risk sanctions against his licensure and loss of employment, as well as penalties against his district and administrators.

32.     Defendant John Robbins is the President of the Iowa State Board of Education.  He is sued in his official capacity, as chief executive of a state government body responsible for enforcing the provisions of Senate File 496.  Under the statute, the "rules of the state board shall require that an age-appropriate, multicultural, and gender-fair approach is used by schools and school districts."  Iowa Code § 256.11 (as amended by Senate File 496 § 1).  The state board is also responsible for establishing "a definition of and standards for an articulated sequential kindergarten through grade twelve media program."  Iowa Code § 256.11.9.b (as amended by Senate File 496 § 2).

33.     Defendant McKenzie Snow is the Director of the Iowa State Department of Education.  She is sued in her official capacity, as chief executive of a state government body

responsible for enforcing the provisions of Senate File 496.  Senate File 496 gives the Department of Education authority to investigate and enforce certain violations of the statute, including violations related to library programs.  Iowa Code § 256.11.9.a.2 (as amended by Senate File 496 § 2); Iowa Code § 279.78.4 (as amended by Senate File 496 § 14).

34.     Defendant Chad Janzen is the Chair of the Iowa State Board of Educational Examiners.  He is sued in his official capacity, as a chief executive of a state government body responsible for enforcing the provisions of Senate File 496.  The Board of Educational Examiners has the authority to conduct hearings related to violations of the statute, including violations related to library programs, and to take subsequent disciplinary action.  *Id.*

35.     Defendants Robbins, Snow, and Janzen are all officers of the State of Iowa ("State Defendants").

36.     Defendant Urbandale Community School District Board Of Directors is the seven-member governing body of Urbandale Community School District.  In its policies, the Urbandale Community School District Board Of Directors delegates authority to the Superintendent of the Urbandale Community School District, school principals, and other executives to enforce the provisions of Senate File 496.

37.     Defendant Rosalie Daca is the Superintendent of the Urbandale Community School District.  As Superintendent, Daca is "the executive officer of the Board of Directors [of the Urbandale Community School District] and shall be directly responsible for the execution of the Board's policies and for the enforcement of all provisions of law relating to the operation of the schools."  Urbandale Community School Board Policy 0311.  She is "delegate[d] . . . the authority and responsibility to administer the District and to implement decisions made by the Board."  *Id.*  Daca therefore is tasked with implementing Senate File 496.  In addition, Daca has broad discretion

to act independent of the Urbandale Community School District Board Of Directors under the Board's policies.  Daca is sued in her official capacity.  Together, the Urbandale Community School District Board Of Directors and Daca are referred to as "Urbandale."

38.     Defendant Norwalk Community School District Board Of Directors is the five-member governing body of Norwalk Community School District.  In its policies, the Norwalk Community School District Board Of Directors delegates authority to the Superintendent of the Norwalk Community School District, school principals, and other executives to enforce the provisions of Senate File 496.

39.     Defendant Shawn Holloway is the Superintendent of the Norwalk Community School District.  As Superintendent, Holloway is "the chief executive officer" of the Norwalk Community School District Board Of Directors and has "the power to make rules not in conflict with law or with the policies of the Board, and decide all matters of administrative and supervisory detail in connection with the operation and maintenance of the schools."  Norwalk Community School District Board Policy BP-302.04.  Holloway therefore is tasked with implementing Senate File 496.  In addition, Holloway has broad discretion to act independent of the Norwalk Community School District Board Of Directors under the Board's policies.  Holloway is sued in his official capacity.  Together, the Norwalk Community School District Board Of Directors and Holloway are referred to as "Norwalk."

40.     Under Senate File 496, Iowa school districts are responsible for establishing kindergarten through twelfth grade library programs that contain "only age-appropriate materials." Iowa Code § 256.11.9.a.1 (as amended by Senate File 496 § 2). "Age-appropriate materials" exclude "material with descriptions or visual depictions of a sex act."  Iowa Code § 256.11.19 (as

amended by Senate File 496 § 4).  This prohibition applies to books made available in school libraries and classroom libraries (the "Age-Appropriate Standard").  *Id.*

41.     Under Senate File 496, Iowa school districts "shall not provide any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six."  Iowa Code § 279.80.2 (as amended by Senate File 496 § 16).  This prohibition appears to apply to books made available in school libraries and classroom collections (the "Identity And Orientation Prohibition").

42.     Iowa school districts, including Urbandale and Norwalk, are responsible for implementing and enforcing the Age-Appropriate Standard and the Identity And Orientation Prohibition of Senate File 496.  *See* Iowa Code § 256.11.9.a.1 (as amended by Senate File 496 § 2); Iowa Code § 279.80.2 (as amended by Senate File 496 § 16).  Iowa school districts are also subject to penalties for violating the Age-Appropriate Standard and the Identity And Orientation Prohibition.  Iowa Code § 256.11.9.a.1 (as amended by Senate File 496 § 2); Iowa Code §§ 272.2.4, 279.27.1-2.

43.     All Defendants are state actors operating under the color of state law with respect to all allegations in this complaint.

44.     The Fourteenth Amendment to the U.S. Constitution incorporates the protections of the First Amendment, which apply to and bind all Defendants.

## FACTUAL ALLEGATIONS

### *School Libraries*

45.     School libraries are integral to student learning.

46.     School libraries are also central to a student's First Amendment right to access new ideas and information.

47.     As the Supreme Court has recognized, the school library "is the principal locus" of a student's freedom "to inquire, to study and to evaluate, to gain new maturity and understanding" – where a student can "explore the unknown" and "discover areas of interest and thought not covered by the prescribed curriculum." *Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 868-69 (1982) (plurality opinion).   "That [schools] are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943).

48.     The State of Iowa mandates that each school district establish a "library program" at the direction of a qualified teacher librarian, who shall have "special expertise in identifying resources and technologies to support teaching and learning."   Iowa Admin. Code r. 281-12.3(12)(a).  The library program shall emphasize "promoting inquiry and critical thinking," *id.*, and shall include "a current and diverse collection of fiction and nonfiction materials in a variety of formats to support student and curricular needs," Iowa Admin. Code r. 281-12.3(12)(b)(6).

49.     The State of Iowa has a proud history of supporting libraries and opposing censorship.  In the 1930s, Des Moines Public Library Director Forrest Spaulding drafted an anti-censorship document that evolved into the American Library Association's "Library Bill of Rights."  The introduction to Spaulding's document stated as follows:  "Now, when indications in many parts of the world point to growing intolerance, suppression of free speech and censorship, affecting the rights of minorities and individuals, the Board of Trustees of the Des Moines Public Library reaffirms these basic policies governing a free public library to serve the best interests of Des Moines and its citizens."

50.    In addition to separate school libraries, many Iowa teachers have a collection of books in their classrooms that are available for students to borrow and read.  Classroom libraries serve a similar purpose and function to school libraries.

51.    Senate File 496 does not make clear whether the Age-Appropriate Standard and the Identity And Orientation Prohibition apply to classroom collections, but many Iowa school districts—including Norwalk and Urbandale—are proceeding as if they do.

### Iowa Senate File 496

52.    Following enactment by the Iowa legislature, Iowa Governor Kim Reynolds signed Senate File 496 into law on May 26, 2023.

53.    Senate File 496 altered several provisions of Iowa law related to school district library programs and the educational programs provided to students enrolled in Iowa school districts.

54.    This lawsuit solely concerns the Age-Appropriate Standard and the Identity And Orientation Prohibition as they apply to school libraries and classroom collections.

### The Age-Appropriate Standard

55.    Under Senate File 496, a school district's "library program" must contain "only age-appropriate materials."  For all grades, age-appropriate materials exclude "any material with descriptions or visual depictions of a sex act."  Iowa Code §§ 256.11.9.a.1, 19.a (as amended by Senate File 496 §§ 2, 4).

56.    The term "sex act" or "sexual activity" is defined as any sexual contact between two or more persons by any of the following:

1.  Penetration of the penis into the vagina or anus.

2.  Contact between the mouth and genitalia or mouth and anus or by contact between the genitalia of one person and the genitalia or anus of another person.

3.  Contact between the finger, hand, or other body part of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 151, or 152.

4.  Ejaculation onto the person of another.

5.  By use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

6.  The touching of a person's own genitals or anus with a finger, hand, or artificial sexual organ or other similar device at the direction of another person.

Iowa Code § 702.17.

57.    The Age-Appropriate Standard does not account for the value of a book as a whole or its literary, scientific, medical, artistic, or political value.

58.    Senate File 496 requires the removal of numerous award-winning books and other literary classics from school libraries and classroom collections solely because just a single portion of the book concerns a sexual encounter.  This serves no legitimate pedagogical purpose.

59.    The Age-Appropriate Standard's prohibition on material with descriptions or visual depictions of a sex act applies to all students in kindergarten through twelfth grade, regardless of age.  Consequently, a 16-year-old high school sophomore in Iowa can legally consent to a sex act, but cannot read a school library book (or a book from a classroom collection) about it.

60.    Although Senate File 496 generally prohibits materials that describe a sex act, the law exempts "Religious books such as the Bible, the Torah, and the Koran," which "shall not be excluded from any public school or institution in the state," in apparent recognition of their value when considered as a whole.  Iowa Code § 256.11.9.a.1 (as amended by Senate File 496 § 2); Iowa Code § 280.6.

61.    Iowa State Representative Skyler Wheeler, Chair of the House Education Committee, has claimed that the Age-Appropriate Standard requires only that "sexually explicit material" that is akin to pornography be removed from school libraries.  "This is quite simple to

me.  Porn doesn't belong in school libraries.  Books that don't contain porn can remain on the shelves."

62.     Governor Reynolds similarly has stated that Senate File 496 merely prohibits books in school libraries that are "pornography."

63.     However, the books being removed from schools under the Age-Appropriate Standard are not pornography, nor do they constitute obscenity, which is the applicable legal standard.  The Supreme Court has defined obscene material as "limited to works" (a) "which, taken as a whole, appeal to the prurient interest in sex," (b) "which portray sexual conduct in a patently offensive way, and" (c) "which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller v.  California*, 413 U.S. 15, 24 (1973).

64.     When applied to students, the obscenity standard must account for the age of the reader.  A book is not obscene as to minors if it has serious value for a legitimate minority of minors, such as older minors. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 488 U.S. 905 (1988); *Am. Booksellers Ass'n, Inc. v. Virginia*, 882 F.2d 125 (4th Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990). *See also Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213–14 (1975) ("Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them.  In most circumstances, the values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors.").

65.     The Age-Appropriate Standard goes far beyond prohibiting books that are obscene as to minors because it prohibits books with even a brief description of a sex act for students of all ages without any evaluation of the book as a whole or its literary, artistic, political, or scientific value.  Under the Age-Appropriate Standard, highly-regarded books – even ones that have been

on shelves for many decades – must be removed from school and classroom libraries in Iowa if they contain a description of a sex act, even if the books taken as a whole are not obscene.

66.     A law that regulates or prohibits speech must sufficiently define terms so that ordinary people can understand what conduct is prohibited and enforcers of the regulation are able to enforce the law in a non-arbitrary, non-discriminatory manner.  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech."  *Id.*

67.     The Age-Appropriate Standard is vague and ambiguous.  In particular, the term "description" in relation to a "sex act" provides no easily understood line as to which types of statements constitute a description of a sex act.  The language of the Age-Appropriate Standard is so vague and ambiguous that the statutory definition of "sex act" itself appears to contain descriptions of sex acts under the Age-Appropriate Standard.  This would mean that a book that is available in an Iowa school district library that contains the statutory language of the Age-Appropriate Standard would have to be removed from the library under the Age-Appropriate Standard.

68.     This vagueness and ambiguity results in overbroad interpretations of the Age-Appropriate Standard and has a chilling effect on protected speech.

69.     The Iowa State Board of Education issued proposed rules concerning Senate File 496 on November 15, 2023.  Iowa State Board of Education, Notice of Intended Action (Nov. 15, 2023) (the "Proposed Rules").  These Proposed Rules include a definition of "age-appropriate" that provides that a "reference or mention of a sex act in a way that does not describe or visually depict a sex act" does not constitute a description or visual depiction of a sex act.  Proposed Rules, Item 2 (amending Iowa Admin. Code r. 281-12.2).  The text of the Proposed Rules is attached as

Exhibit B.  This attempt to clarify the meaning of "age-appropriate" is inadequate because it offers no reasonable guidance on what the term "description" means in relation to a "sex act."  Nor do the Proposed Rules save the Age-Appropriate Standard from prohibiting books that are not obscene as to minors.

### *The Identity And Orientation Prohibition*

70.     Under Senate File 496, a school district also cannot provide (among other things) any program or promotion relating to "gender identity" or "sexual orientation" to students in kindergarten through sixth grade.  Iowa Code § 279.80.2 (as amended by Senate File 496 § 16).

71.     "Gender identity" means a gender-related identity of a person, regardless of the person's assigned sex at birth.  Iowa Code § 216.2.10.

72.     "Sexual orientation" means actual or perceived heterosexuality, homosexuality, or bisexuality.  Iowa Code § 216.2.14.

73.     Senate File 496 provides no explanation of what is considered a "program" or "promotion," but some districts have construed the Identity And Orientation Prohibition to apply to books and library programs.

74.     The scope of the Identity And Orientation Prohibition is unclear and vague.  Senate File 496 provides no limiting principle for what types of materials "relate" to gender identity or sexual orientation.

75.     The Proposed Rules state that the Iowa State Department of Education, in enforcing the statute, "will not conclude that a neutral statement regarding sexual orientation or gender identity" violates the Identity And Orientation Prohibition.  Proposed Rules, Item 5 (amending Iowa Admin. Code r. 281-12.3(15)).  This attempt to clarify is inadequate because the meaning of "neutral statement" is unclear and vague.  For example, it is unclear whether a book that references a marriage but with any adjective or description, such as "happy," would fall under the prohibition.

76.     Iowa school districts, teachers, and librarians have struggled to determine whether the Identity And Orientation Prohibition applies to school and classroom libraries.  Some Iowa school districts, such as Norwalk, have applied the Identity And Orientation Prohibition to school and classroom library books.  Other Iowa school districts, such as Urbandale, have stated that they are waiting to apply the Identity And Orientation Prohibition to school library books until they receive guidance from the State Defendants.

77.     As written, the Identity And Orientation Prohibition could apply to wide swaths of constitutionally protected books that any person would recognize should be available to kindergarten through sixth grade students.  Books that even mention a person's gender or the gender of their partner in a relationship or marriage may "relate" to gender identity or sexual orientation, which would subject them to the Identity And Orientation Prohibition.

78.     Members of the Iowa legislature have suggested that the Identity And Orientation Prohibition is intended to be applied in a discriminatory manner, only to LGBTQ+ individuals. Iowa State Senator, and Senate File 496 Floor Manager, Ken Rozenboom has stated that he believes the Identity And Orientation Prohibition prohibits schools from making available to students in kindergarten through sixth grade any books with gay or transgender characters. Rozenboom said, "For all of human history, that was not an issue."  There is no suggestion that the Identity And Orientation Prohibition is intended to apply to books with LGBTQ+ or heterosexual characters.

79.     Plaintiffs are unaware of any suggestion by the State Defendants or the Iowa legislature that the Identity And Orientation Prohibition is intended to apply to books with heteronormative characters or themes.

*Penalties And Procedures*

80.     Teachers, librarians, and other educators licensed by the Iowa State Board of Educational Examiners face license sanctions and adverse employment actions for violation of Senate File 496, including termination of their employment.

81.     Senate File 496 establishes penalties for violations of the Age-Appropriate Standard and provides for enforcement of these penalties beginning January 1, 2024.

> If, after investigation, the [Iowa State Department of Education] determines that a school district or an employee of a school district has violated the [Age-Appropriate Standard] related to library programs containing only age-appropriate materials, beginning January 1, 2024, the school district or employee of the school district, as applicable, shall be subject to the following:
>
> (a)  For the first violation . . . , the [Iowa State Department of Education] shall issue a written warning to the board of directors of the school district or the employee, as applicable.
>
> (b)  (i)  For a second or subsequent violation . . . , if the [Iowa State Department of Education] finds that a school district knowingly violated [the Age-Appropriate Standard], the superintendent of the school district shall be subject to a hearing conducted by the board of educational examiners . . .  which may result in disciplinary action.
>
> (ii)  For a second or subsequent violation . . . , if the [Iowa State Department of Education] finds that an employee of the school district who holds a license, certificate, authorization, or statement of recognition issued by the board of educational examiners knowingly violated [the Age-Appropriate Standard], the employee shall be subject to a hearing conducted by the board of educational examiners . . .  which may result in disciplinary action.

Iowa Code § 256.11.9.a.2 (as amended by Senate File 496 § 2).

82.     The State will also penalize violations of the Identity And Orientation Prohibition. However, it is unclear whether the Age-Appropriate Standard encompasses the Identity And Orientation Prohibition, and thus whether the penalties that apply to violations of the Age-Appropriate Standard also apply to violations of the Identity And Orientation Prohibition, or whether a different penalty procedure will apply.  Regardless, Standard IV of the Standards of Professional Conduct and Ethics promulgated by the Iowa State Board of Educational Examiners

prohibits a licensee from "[f]ailing to comply with federal, state, and local laws applicable to the fulfillment of professional obligations."  Violation of such standards may result in the revocation or suspension of an educator's license under Iowa Code section 272.2.4.  Iowa Code section 279.27.1 provides that a teacher's employment may be terminated for "just cause," upon recommendation by a superintendent and after a hearing and determination by a school board, and that a superintendent may suspend the teacher pending that hearing and determination by the school board.  Just cause "includes but is not limited to a violation of the code of professional conduct and ethics of the board of educational examiners if the board has taken disciplinary action" against the teacher, which includes violations of state law.  Iowa Code § 279.27.2.

83.    Senate File 496 requires school districts to publish explanations "of the procedures or policies in effect for the parent or guardian of a student enrolled in the school district to request the removal of a book, article, outline, handout, video, or other educational material that is available to students in the classroom or in a library operated by the school district," and a "detailed explanation of the procedures or policies in effect to request the review of decisions made by the board of directors of the school district" on their website.  Iowa Code § 279.77.1 (as amended by Senate File 496 § 13).

84.    Senate File 496 establishes that the "identity of a parent or guardian who requests the removal of a book" or other material that is available to students in a library operated by a school district "shall be confidential and shall not be a public record."  Iowa Code § 279.774) (as amended by Senate File 496 § 13).  This confidentiality provision does not apply to the identity of a parent or guardian who requests the review of a decision to remove a book or other material.

***Previous Attempts To Remove Books In Urbandale***

85.     The push to remove books from school libraries in Urbandale began in 2021, when five parents challenged its provision of five books.  One parent described these books as "pornographic," "grooming," and "manipulating kids based on outside agendas."

86.     Prior to the passage of Senate File 496, Urbandale had a policy in place to evaluate whether books should be removed from school libraries.  Under Urbandale's policies, a member of the greater Urbandale community could object to books made available in the school library, first by complaining to a teacher or librarian.  The teacher or librarian was supposed to try to resolve the issue by explaining to the complainant "the district's selection procedure, criteria to be met by the instructional materials, . . . qualifications of those persons selecting the material, . . . the role of the objected material in the education program and/or the library collection, its intended educational purpose, and additional information regarding its use."

87.     If the issue was not resolved, the complainant could complete a Request for Reconsideration of Instructional and Library Materials Form to formally challenge a book and file the form with the school's principal.  The principal would then file the objection with the Superintendent for re-evaluation, who would convene a re-evaluation committee.  The committee would evaluate the book and make a recommendation to the Superintendent, who would issue a decision.  The decision could be appealed to the School Board, and the School Board's decision would be final if it elected to hear the appeal.  Urbandale Board Policy Manual Regulation 0631C-R(1)-R(1).

88.     The reconsideration committee, in determining whether a book was appropriate for its designated audience at the time, was supposed to "remember that the school system must be responsive to the needs, tastes, and opinions of the community it serves" and required to

"distinguish between broad community sentiment and attempts to impose personal standards." *Id.*
at Exhibit 0631C-E(3)-E(1).

89.     The five books that were challenged in 2021 were reviewed through the School
Board's reconsideration process, using set criteria for determining what books were appropriate
for different age groups.  The five books ultimately were not removed by Urbandale at that time,
but Urbandale has since removed two of these books as a result of Senate File 496 (*Gender Queer*
by Maia Kobabe and *All Boys Aren't Blue* by George M. Johnson).

### Urbandale's Application Of Senate File 496

90.     After the passage of Senate File 496, Urbandale developed an initial list of
approximately 400 books to be removed from school libraries and classroom collections.  This list
was developed behind closed doors and included books that Urbandale determined must be
removed under the Age-Appropriate Standard or the Identity And Orientation Prohibition.

91.     After intense pushback from school district employees and community residents,
Urbandale decided not to remove books based on the Identity And Orientation Prohibition at that
time.  Urbandale created a revised list of approximately 60 books that it determined violate the
Age-Appropriate Standard (the "Urbandale Removal List").

92.     On information and belief, the Urbandale Removal List is not based on requests
from parents or guardians of district students.

93.     The most recent list of books on the Urbandale Removal List ("Urbandale Removed
Books") is as follows:

| BOOK TITLE: | AUTHOR: |
|---|---|
| Call Me By Your Name | Andre Aciman |
| The Handmaid's Tale | Margaret Atwood |
| The Haters | Jesse Andrews |
| Damsel | Elana K. Arnold |

| | |
|---|---|
| Red Hood | Elana K. Arnold |
| What Girls Are Made Of | Elana K. Arnold |
| Thirteen Reasons Why | Jay Asher |
| Forever | Judy Blume |
| Ready or Not | Meg Cabot |
| The Perks of Being a Wallflower | Stephen Chbosky |
| A Stolen Life | Jaycee Dugard |
| The Carnival at Bray | Jessie Ann Foley |
| Looking for Alaska | John Green |
| Water for Elephants | Sara Gruen |
| Crank | Ellen Hopkins |
| Tricks | Ellen Hopkins |
| Tilt | Ellen Hopkins |
| Identical | Ellen Hopkins |
| All Boys Aren't Blue | George M. Johnson |
| Ulysses | James Joyce |
| The Sun and Her Flowers | Rupi Kaur |
| Milk and Honey | Rupi Kaur |
| The Duff | Kody Keplinger |
| Gender Queer | Maia Kobabe |
| Two Boys Kissing | David Levithan |
| Last Night at the Telegraph Club | Malinda Lo |
| A Court of Mist and Fury | Sarah J. Maas |
| A Court of Frost and Starlight | Sarah J. Maas |
| A Court of Silver Flames | Sarah J. Maas |
| A Court of Wings and Ruin | Sarah J. Maas |
| A Court of Thorns and Roses | Sarah J. Maas |
| Empire of Storms | Sarah J. Maas |
| Kingdom of Ash | Sarah J. Maas |
| Wicked | Gregory Maguire |
| Sold | Patricia McCormick |
| The Bluest Eye | Toni Morrison |
| Beloved | Toni Morrison |
| Song of Solomon | Toni Morrison |
| Shine | Lauren Myracle |
| The Infinite Moment of Us | Lauren Myracle |

| | |
|---|---|
| Like a Love Story | Abdi Nazemian |
| Breathless | Jennifer Niven |
| Out of Darkness | Ashley Hope Perez |
| Nineteen Minutes | Jodi Picoult |
| The Nowhere Girls | Amy Reed |
| Push | Sapphire |
| Anatomy of a Single Girl | Daria Sndowsky |
| Anatomy of a Boyfriend | Daria Sndowsky |
| Saga | Brian K. Vaughan |
| The Color Purple | Alice Walker |
| Native Son | Richard Wright |

94.     The Urbandale Removal List includes seventeen books, authored by thirteen different authors, that were published by ten of PRH's creatively independent imprints:

| BOOK TITLE: | AUTHOR: | PRH IMPRINT: |
|---|---|---|
| The Handmaid's Tale | Margaret Atwood | Anchor Books |
| The Handmaid's Tale Graphic Novel | Margaret Atwood | Nan A. Talese |
| 13 Reasons Why | Jay Asher | Razorbill |
| As I Lay Dying | William Faulkner | Vintage |
| Looking for Alaska | John Green | Penguin Books |
| The Kite Runner | Khaled Hosseini | Riverhead Books |
| Two Boy Kissing | David Levithan | Ember |
| Last Night at the Telegraph Club | Malinda Lo | Dutton Books for Young Readers |
| Beloved | Toni Morrison | Vintage |
| The Bluest Eye | Toni Morrison | Vintage |
| Song of Solomon | Toni Morrison | Vintage |
| Breathless | Jennifer Niven | Ember |
| I Am Not Your Perfect Mexican Daughter | Erika Sanchez | Knopf Books for Young Readers |
| Push | Sapphire | Vintage |
| Anatomy of a Boyfriend | Daria Sndowsky | Ember |
| Anatomy of a Single Girl | Daria Sndowsky | Delacorte Press |
| The Color Purple | Alice Walker | Penguin Books |

95.     The Urbandale Removal List includes *As I Lay Dying*, *The Kite Runner*, and *Beloved*.

96.     *As I Lay Dying*, written by William Faulkner and published in 1930, is a saga narrated by fifteen different characters centered around the death of Addie Bundren and her poor, rural family's quest to honor her wish to be buried in her hometown of Jefferson, Mississippi. Written in stream of consciousness, the novel reflects on themes of existentialism, mortality, the fight between self-interest and duty, the tension between language and action, and the relationship between childbearing and death.  It is consistently ranked among the best novels of the twentieth century.  Faulkner was awarded the Nobel Prize in Literature in 1949.

97.     *The Kite Runner*, written by Khaled Hosseini and published in 2003, tells the story of Amir, a young boy from Kabul, in the backdrop of turbulent events, from the fall of Afghanistan's monarchy through the Soviet invasion, the exodus of refugees to Pakistan and the United States, and the rise of the Taliban regime. This *New York Times* bestseller explores themes of friendship, betrayal, guilt, redemption, and father-son relationships.  The novel won the South African Boeke Prize, was twice voted Reading Group Book of the Year, and has been adapted into a motion picture and play.

98.     *Beloved*, written by Toni Morrison and published by PRH, is set in the period after the American Civil War, telling the story of a family of formerly-enslaved people whose Cincinnati home is haunted by a malevolent spirit.   The novel explores themes of mother-daughter relationships, the psychological effects of slavery, the effect of slavery on African-American families, manhood and masculinity, pain and generational trauma, and heroism.  *Beloved* won the Pulitzer Prize for Fiction and the Anisfield-Wolf Book Award, and was a National Book Award Finalist.  The novel has been adapted into a motion picture and was ranked by the *New York Times*

as the best work of American fiction from 1981 to 2006.  Toni Morrison was awarded the Nobel Prize in Literature in 1993.

99.    The Urbandale Removal List includes classic, award-winning books that are commonly covered in Advanced Placement exams, such as *The Color Purple*, *Native Son*, *The Handmaid's Tale*, *As I Lay Dying*, and *Beloved*.

100.    *The Color Purple*, written by Alice Walker, is a critically acclaimed novel that tells the story of a poor, young, uneducated African-American girl named Celie who lives in rural Georgia in the early 1900s.  The novel details Celie's encounters with racism, sexism, abuse, and challenges to her own sexuality.  *The Color Purple* won the 1983 Pulitzer Prize for Fiction and the National Book Award for Fiction.

101.    *Native Son*, written by Richard Wright, is a powerful, award-winning novel that was first published in 1940.  Set in Chicago in the 1930s, *Native Son* is the story of Bigger Thomas, a young Black man whose life spirals downward after he kills a young white woman in a moment of panic.  This novel both condemns social and racial injustice and paints an unsparing portrait of the Black experience in America, revealing the tragic effects of poverty, racism, and hopelessness on the human spirit.

102.    *The Handmaid's Tale*, written by Margaret Atwood, is an award-winning dystopian novel that explores the author's criticisms of elements of contemporary American society by imagining a future in which the U.S. government is overthrown by a patriarchal cult.  *The Handmaid's Tale* won the 1985 Governor General's Award and the first Arthur C. Clarke Award in 1987.  The novel was also nominated for the 1986 Nebula Award, the 1986 Booker Prize, and the 1987 Prometheus Award.

103.    During the 2023-24 school year, Hailie intended to check out and read *The Color Purple*, *The Handmaid's Tale*, and *Looking for Alaska* from her school's library or from classroom libraries at her school, but she could not and cannot do so because those titles have been removed as a result of Senate File 496.

104.    *Looking for Alaska*, written by John Green, is a coming-of-age novel that follows the protagonist, Miles "Pudge" Halter, as he leaves his life in Florida for boarding school in Alabama.  Based on characters and events from the author's own life, the novel delves into themes of friendship, grief, forgiveness, and the search for meaning in the face of tragedy.  *Looking for Alaska* has won and been nominated for several awards, including the ALA's Michael L. Printz Award for best young adult novel.

105.    None of the books that are published by PRH and included on the Urbandale Removal List qualifies as pornography or obscenity.

106.    The Urbandale Removal List stigmatizes the Urbandale Removed Books, as well as the authors and publishers of those books, falsely branding them as inappropriate and potentially pornographic.

107.    Urbandale has informed its high school students that they may bring a copy of a book on the Urbandale Removal List to school (if they are able to obtain a copy), but that they may not discuss or share the book with other students.  Some students who attend Urbandale schools will not bring to school a copy of a book on the Urbandale Removal List because they fear how they will be perceived by certain teachers or peers.  The Urbandale Removal List stigmatizes students who have read or discussed, or seek to read or discuss, the Urbandale Removed Books.

108.    The Urbandale Removal List does not account for the value of the Urbandale Removed Books as a whole or for their literary, scientific, medical, artistic, or political value.

109.    The removal of Urbandale Removed Books impairs students from being exposed to diverse experiences and viewpoints that are integral to a student's well-rounded education.

110.    Urbandale's existing polices recognize that "[l]ibrary materials should encourage students to utilize higher order thinking skills and to become informed decision-makers, to exercise freedom of thought and to make independent judgements through examination and evaluation of relevant information, evidence and differing viewpoints."   Urbandale Board Policy Manual Regulation 0631A-R(1)-R(1).

### *Norwalk And Other Iowa School Districts*

111.    Other school districts in Iowa have also targeted for removal or removed books in advance of the penalty provisions of Senate File 496 taking effect on January 1, 2024.

112.    The Norwalk School District has determined that the Identity And Orientation Prohibition applies to books in its schools and has created a list of books to be removed based on both the Age-Appropriate Standard and the Identity And Orientation Prohibition ("Norwalk Removal List").   Books on the Norwalk Removal List include:

| BOOK TITLE: | AUTHOR: |
|---|---|
| My Moms Love Me | Anna Membrino |
| This Day in June | Gayle E. Pittman |
| Morris Micklewhite and the Tangerine Dress | Christine Baldacchino |
| What Was Stonewall? | Nico Medina |
| Rainbow Revolutionaries | Sarah Prager |
| Who Was Harvey Milk? | Corinne Grinapol |
| Pride: The Story of Harvey Milk and the Rainbow Flag | Rob Sanders |
| The Insiders | Mark Oshiro |
| The Mighty Heart of Sunny St. James | Ashley Herring Blake |
| What's Gender Identity? | Katie Kawa |
| Melissa | Alex Gino |
| Frankie & Bug | Gayle Forman |
| Lily and Dunkin | Donna Gephart |

| | |
|---|---|
| The Deepest Breath | Meg Grehan |
| Gender Equality | Marie Des Neiges Leonard |
| Ana on the Edge | AJ Sass |
| My Life as a Diamond | Jenny Manzer |
| Zenobia | Lisa Bunker |
| Too Bright to See | Kyle Lukoff |
| Rick | Alex Gino |
| A High Five for Glenn Burke | Phil Bildner |
| The Magic Fish | Le Nguyen Trung |
| Ivy Aberdeen's Letter to the World | Ashley Herring Blake |
| Gay & Lesbian Parents | Juliana Fields |
| Frequently Asked Questions About Same-Sex Marriage | Tracy Brown |
| The Pants Project | Cat Clark |
| The Night Owl from Dogfish | Holly Goldberg Sloan |
| Marco Impossible | Hannah Moskowitz |
| So This is Ever After | FT Lukens |
| Brave Face: A Memoir | Shaun David Hutchinson |
| The Best At It | Maulik Pancholy |
| One Life | Sarah Durand |
| Saving Montgomery Sole | Mariko Tamaki |
| Archenemy | Paul Hobin |
| The Difference Between You & Me | Madeleine George |
| Almost Flying | Jake Maria Arlow |
| In the Key of Us | Mariana Lockington |
| Being Jazz | Jazz Jennings |
| Gracefully Grayson | Ami Polonsky |
| Obie is Man Enough | Schuyler Bailar |
| The Moon Within | Aida Salazar |
| The Other Boy | MG Hennessey |
| Pet | Akwaeke Emezi |
| Empire of Storms | Sarah J. Maas |
| Forever | Judy Blume |
| Sold | Patricia McCormick |
| The Infinite Moment of Us | Lauren Myracle |
| Tilt | Ellen Hopkins |
| Wicked | Gregory Maguire |

| | |
|---|---|
| A Court of Frost and Starlight | Sarah J. Maas |
| A Court of Mist and Fury | Sarah J. Maas |
| A Court of Silver Flames | Sarah J. Maas |
| A Court of Thorns and Roses | Sarah J. Maas |
| A Court of Wings and Ruins | Sarah J. Maas |
| A Stolen Life | Jaycee Dugard |
| All Boys Aren't Blue | George M. Johnson |
| The Kite Runner | Khaled Hosseini |
| The Handmaid's Tale | Margaret Atwood |
| The Bluest Eye | Toni Morrison |
| Memoirs of a Geisha | Arthur Golden |
| Forrest Gump | Winston Groom |
| Water for Elephants | Sara Gruen |
| The Color Purple | Alice Walker |
| Where the Crawdads Sing | Delia Owens |

113.    The Norwalk Removal List includes 21 books, authored by 21 different authors,

that were published by eighteen of PRH's creatively independent imprints:

| BOOK TITLE: | AUTHOR: | PRH IMPRINT: |
|---|---|---|
| What Was Stonewall? | Nico Medina | Penguin Workshop |
| Who Was Harvey Milk? | Corinne A. Grinapol | Penguin Workshop |
| Pride: The Story of Harvey Milk and the Rainbow Flag | Rob Sanders | Random House Books for Young Readers |
| Lily and Dunkin | Donna Gephart | Delacorte Press |
| Zenobia | Lisa Bunker | Viking Books for Young Readers |
| Too Bright to See | Kyle Lukoff | Dial Books |
| The Magic Fish | Le Nguyen Trung | Random House Graphic |
| The Pants Project | Cat Clark | Sourcebooks Young Readers |
| The Night Owl from Dogfish | Holly Goldberg Sloan | Rocky Pond Books |
| One Life | Sarah Durand | Razorbill |
| The Difference Between You & Me | Madeleine George | Viking Children's Books |
| Almost Flying | Jake Maria Arlow | Dial Books |
| Being Jazz | Jazz Jennings | Ember |
| Obie is Man Enough | Schuyler Bailar | Crown Books for Young Readers |

| Pet | Akwaeke Emezi | Make Me a World |
| The Kite Runner | Khaled Hosseini | Riverhead Books |
| The Handmaid's Tale | Margaret Atwood | Anchor Books |
| The Bluest Eye | Toni Morrison | Vintage |
| Memoirs of a Geisha | Arthur Golden | Vintage |
| Forrest Gump | Winston Groom | Doubleday |
| Where the Crawdads Sing | Delia Owens | G.P. Putnam's Sons |

114.    None of the books that are published by PRH and included on the Norwalk Removal List qualifies as "pornography" or obscenity.

115.    Many books have been added to the Norwalk Removal List based on the Identity And Orientation Prohibition due to portrayals of LGBTQ+ individuals and relationships.

116.    The Norwalk Removal List applies the Identity And Orientation Prohibition in a discriminatory manner as the Iowa legislature intended, removing only books that relate to transgender, nonbinary, and LGBTQ+ orientation.  Notwithstanding Senate File 496, Norwalk Elementary Schools allow books that discuss gender roles and identities in heteronormative families, even though such books also fall under the plain language of the Identity And Orientation Prohibition.  For example, Norwalk Elementary Schools have not identified the following books (which Plaintiffs do not contend should be removed) for removal:  *Families* by Sarah Schuette, which describes the relationships of children to their nuclear and extended families and their community; *Pete the Cat: Rock On, Mom and Dad!*, which tells the story of Pete thanking his Mom and Dad with a special surprise; and *Just Like Me* by Vanessa Brantley-Newton, which discusses gender roles, heterosexual parents, and the feelings and interests of girls.

117.    The Norwalk Removal List also applies to classroom collections, forcing teachers to determine whether to censor books from their classrooms or to subject themselves and their district to penalties, as a result of Senate File 496.

118.   Other Iowa school districts have created their own lists of books that they determined must be removed from school libraries and classroom collections as a result of Senate File 496.  For example, five Iowa school districts have determined that Senate File 496 requires that George Orwell's *1984* be removed from school libraries and classroom collections, and ten Iowa school districts have determined that Senate File 496 requires that Aldous Huxley's *Brave New World* be removed from school libraries and classroom collections.  *1984* and *Brave New World* are classic, award-winning novels that are commonly covered in Advanced Placement exams.  Laurie Halse Anderson's novel *Speak* and her memoir *Shout* (discussed below) are also covered in Advanced Placement exams.  A law that requires the removal of books from school libraries that are covered in Advanced Placement exams disadvantages Iowa students and serves no legitimate pedagogical purpose.

119.   Iowa school districts have included non-fiction books on their lists of books that they determined must be removed from school libraries and classroom collections as a result of Senate File 496, including *Shout* by Laurie Halse Anderson, *Who Was Harvey Milk?* by Corinne Grinapol, and *I Know Why the Caged Bird Sings* by Maya Angelou.

120.   *Shout*, written by Laurie Halse Anderson and published by PRH in 2019, is a non-fiction poetry memoir recounting Anderson's personal experience with sexual assault and perspective on sexual violence.  *Shout* was awarded a Blue Ribbon by the Center for Children's Books, named in the Top Ten by "Rise: A Feminist Book Project," and longlisted for the National Book Award for Young People's Literature.

121.   *Who Was Harvey Milk?*, written by Corinne Grinapol and published by PRH in 2020, is an illustrated children's book about the life of Harvey Milk, the first openly gay elected politician in California and one of the most influential LGBTQ+ officials in United States history.

Milk's life was tragically cut short due to anti-LGBTQ+ hatred.  *Who Was Harvey Milk?* recounts Milk's life and legacy of inspiring his community to accept LGBTQ+ Americans.

122.    *I Know Why the Caged Bird Sings*, written by Maya Angelou and published by PRH in 1969, is a non-fiction autobiographical coming-of-age story about the writer and poet's early years that illustrates how strength of character and love of literature helped her overcome racism and trauma.  It recounts Angelou's experience with sexual assault.  *I Know Why the Caged Bird Sings* was a National Book Award Finalist, and Angelou was a Pulitzer Prize nominee, a National Medal of Arts awardee, and a Presidential Medal of Freedom recipient.

123.    Some Iowa school districts have not created lists of books to remove as a result of Senate File 496 in order to avoid public scrutiny, but they have still required that school libraries and classroom collections remove books due to the Age-Appropriate Standard and the Identity And Orientation Prohibition.  In this way, Senate File 496 has led to covert censorship.

124.    The application of the Identity And Orientation Prohibition to school libraries and classroom collections also restricts the access of some seventh and eighth grade students to books that may only be prohibited under Senate File 496 as to kindergarten through sixth grade students. Some teachers in Iowa school districts teach sixth grade students as well as seventh or eighth grade students in the same classrooms.  The Identity And Orientation Prohibition effectively forces these teachers to restrict access to prohibited books for all of their students, not just those in kindergarten through sixth grade, or to face penalties.

### *Confusion And Overbreadth In Application Of Senate File 496*

125.    Senate File 496 is vague, and it is being construed and applied broadly.

126.    Teachers, librarians, district officials, and State Board members have pleaded for guidance on Senate File 496, complaining that the law is vague.  The vagueness of Senate File 496 has resulted in conflicting and overbroad interpretations in school districts throughout the State.

127.    For example, the law does not expressly prohibit "materials" (books) that relate to gender identity or sexual orientation.  Urbandale initially took the position that the law may prohibit school library books that relate to gender identity or sexual orientation, creating a list of almost 400 library books to be removed.  Urbandale then changed course, revising the list to remove only books that potentially violate the Age-Appropriate Standard.  At the same time, other districts have interpreted the law to apply to books that relate to gender identity or sexual orientation.

128.    Iowa State Board of Education President John Robbins stated during a State Board meeting that, in talking with educators about Senate File 496, "there's a lot of confusion" about the scope of the prohibitions.  Robbins said he has talked to people "in the field" who hope the State Board or somebody else "provides direction because right now, we're kind of either guessing what is right or wrong, and not being in violation of the law."

129.    The Iowa Association of School Librarians and the Iowa Library Association requested guidance from the State Department of Education in May of 2023, including the following questions:

a.  "What resources and standards will the Department of Education apply to identify and classify the age-appropriateness of school library materials?  When will teacher librarians and library workers be trained in these resources?"

b.  "Will classic literature that is part of the Advanced Placement curriculum for AP Literature and Composition now be illegal due to age-appropriateness?  How will the College Board be made aware that Iowa's Advanced Placement courses in Literature and Composition can no longer provide required classic literature due to the age-appropriateness definition?"

c.  "How are 'programs,' 'curriculum,' 'promotion,' and 'instruction' defined in [the Identity And Orientation Prohibition]?  Would this section be interpreted to include the contents of library books, book displays, or book recommendations that relate to gender identity or sexuality?"

d.  "Does [the Identity And Orientation Prohibition] imply that library books also cannot relate to gender identity or sexual orientation in grades K-6?  If so, by what guidelines will that be determined?"

e. "Would promotion or recommendation of library books with content related to gender identity or sexual orientation be prohibited for libraries serving grades K-6 under [the Identity And Orientation Prohibition]?"

f. "Does gender identity or sexual orientation standards include the full spectrum of expression including heteronormative content?"

g. "Does the bill apply to library materials?  If so, how will one-room school libraries serving K-12 be required to physically shelve and manage materials filtered as age-appropriate and age-inappropriate based on grade rather than reading level or interest?"

h. "Will the presence of materials that may be age-appropriate for some students but not deemed age-appropriate for all students be considered a violation of this law?"

130.    The State Department of Education and State Board of Education have not provided meaningful guidance, taking the position instead that "each school district is required to create their own policies and procedures for book selection and reconsideration that comply with Iowa law."

131.    The Proposed Rules do not address the areas of ambiguity and confusion concerning the Age-Appropriate Standard or the Identity And Orientation Prohibition.

132.    Senate File 496 is having a chilling effect on protected First Amendment activity. As a result of Senate File 496, school districts throughout Iowa are erring on the side of censorship to avoid the substantial penalties that librarians and teachers may face if the "wrong" books are made available to students in school libraries and classroom collections.

133.    Urbandale has stated that it "had to take a fairly broad interpretation of the law knowing that if our interpretation was too finite, our teachers and administrators could be faced with disciplinary actions" under the law.

134.    Urbandale Superintendent Rosalie Daca made clear that the district is erring on the side of censorship to protect district staff from punishment under Senate File 496.  "As someone who is tasked with the livelihood of 450 teachers and administrators, I owe it to every staff member and their family to be careful, mindful, and intentional about the guidance we provide knowing

that if our guidance is wrong, we could jeopardize their professional and personal lives," Daca stated.  "This has weighed heavily on my mind and heart."

135.    The law is also infringing upon adults' First Amendment rights.  Some libraries are shared among a school and the community, accessible to both students and town residents.  In order to keep books that are prohibited under Senate File 496 from students, some shared libraries are inhibiting adults' access to those materials.

136.    For example, the town of Alta shares a library with the town elementary school.  In Alta, the district and the library have explored the possibility of ending the partnership, according to the former Alta Community Library director, who has stated that the law is "very vague."

137.    Alta-Aurelia Superintendent Denny Olhausen said his district would "probably err[] on the side of caution, making sure that if we think there's anything that has sexual content, that it needs to be removed."

138.    The Proposed Rules state that the Age-Appropriate Standard "relates solely to library programs operated by the district, which means library programs over which the district exercises administrative control."  Proposed Rules, Item 4 (amending Iowa Admin. Code r. 281-12.3(12)(d)).  If this portion of the Proposed Rules is adopted, it is unclear whether exempting shared libraries from the Age-Appropriate Standard is consistent with Senate File 496.

139.    Iowa State Senator Ken Rozenboom said that Senate File 496 is intended to apply to shared libraries:  "We didn't make an exception very intentionally because we don't want an exception with this law."

140.    School districts such as Urbandale and Norwalk have discretion in their implementation of Senate File 496.  Urbandale and Norwalk have elected to compile and adopt lists of books to remove from school libraries and classroom collections.  In compiling and

adopting the Urbandale Removal List and the Norwalk Removal List, Urbandale and Norwalk have deliberately and consciously made policy decisions from among various alternatives.

141.    In the absence of guidance from the State, Urbandale and Norwalk have deliberately and consciously developed and implemented their own policies and customs regarding those provisions.  The Urbandale Removal List, along with any guidance that Urbandale has provided to create that list, constitute Urbandale's policy implementing Senate File 496.  The Norwalk Removal List, along with any guidance that Norwalk has provided to create that list, constitute Norwalk's policy implementing Senate File 496.

142.    The policies and customs that Urbandale and Norwalk have adopted resulted in Urbandale and Norwalk removing more books than the unconstitutional provisions of Senate File 496 require be removed.

143.    The State Defendants have acknowledged the discretion that Urbandale and Norwalk have exercised in removing books from school libraries pursuant to the Age-Appropriate Standard.  The State Defendants have stated that in their view Urbandale and Norwalk were removing books that Senate File 496 does not require to be removed.

144.    With regard to the Identity And Orientation Prohibition, Norwalk's policies and customs have resulted in Norwalk removing from school libraries books that explore LGBTQ+ themes or portray LGBTQ+ characters while retaining similar books that relate to cisgender identity and heteronormative sexual orientation.  Norwalk's policy and custom is inconsistent with the plain language of the Identity And Orientation Prohibition.

**CAUSES OF ACTION**

**COUNT I – AUTHOR PLAINTIFFS AND PRH**
**AGAINST ALL DEFENDANTS**
**First Amendment, Unreasonable Content-Based Restriction And Overbreadth**
**(Age-Appropriate Standard)**

145.    Paragraphs 1 – 144 are incorporated by reference as if fully set forth herein.

146.    School libraries and classroom collections within Urbandale, Norwalk, and other Iowa school districts are, at a minimum, nonpublic forums.  In nonpublic forums, states cannot impose restrictions on speech that are unreasonable in light of the forum's purpose. *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018).

147.    The Age-Appropriate Standard is a content-based restriction because it regulates the availability of books in school libraries and classroom collections based on "the topic discussed, or the idea or message expressed" – namely, whether the book describes or visually depicts a sex act. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

148.    The Age-Appropriate Standard, including Urbandale's and Norwalk's policies and customs implementing it, violates the First and Fourteenth Amendments to the U.S. Constitution on its face because it is not reasonable in light of the purpose of school libraries and classroom collections.

149.    The Age-Appropriate Standard requires that books that describe or visually depict a sex act be removed from school libraries and classroom collections, which prevents all students (including students who have reached the age of majority) from checking out those books at school, rather than requiring parents who seek to prevent their children from accessing those books to inform a school district that their children should not be allowed to access such books.

150.    The Age-Appropriate Standard is over-inclusive in that it covers any book with any description of a sex act for students of all age groups without regard to (a) whether the book when

"taken as a whole, appeal[s] to the prurient interest in sex," (b) whether the book "portray[s] sexual conduct in a patently offensive way," or (c) whether the book when "taken as a whole, [has] serious literary, artistic, political, or scientific value," as that standard applies to minors. *Miller*, 413 U.S. at 24.

151.    The Proposed Rules also fail to account for the *Miller* standard and do not adequately limit the term "description" as it relates to a "sex act."

152.    The First and Fourteenth Amendments to the U.S. Constitution prohibit statutes that punish a substantial amount of protected speech in the course of regulating unprotected speech. Such statutes are unconstitutionally overbroad. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002).   The Age-Appropriate Standard, including Urbandale's and Norwalk's policies and customs implementing it, prohibits a wide swath of constitutionally protected material.

153.    The Age-Appropriate Standard is also under-inclusive in that it exempts religious books, including the Bible, presumably in recognition that, when taken as a whole, religious books do not "appeal to the prurient interest in sex" or "portray sexual conduct in a patently offensive way" and have serious literary value. *Miller*, 413 U.S. at 24.

154.    The Age-Appropriate Standard, including Urbandale's and Norwalk's policies and customs implementing it, violates the First and Fourteenth Amendments to the U.S. Constitution as to the Author Plaintiffs and PRH because it interferes with their ability to make their books available to whom they desire and to distribute constitutionally protected books, and it unconstitutionally chills the Author Plaintiffs, PRH, and others from engaging in protected activity.

**COUNT II – PARENT PLAINTIFF SCOTT BONZ ON BEHALF OF HAILIE BONZ**
**AGAINST THE STATE DEFENDANTS AND URBANDALE**
**First Amendment, Right to Receive Information**
**(Age-Appropriate Standard)**

155.     Paragraphs 1 – 144 are incorporated by reference as if fully set forth herein.

156.     In the setting of a public school library, the First Amendment "protects the right to receive information and ideas." *Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867-68 (1982) (plurality opinion).  This right is violated when a state or school district removes or restricts access to library books "in a narrowly partisan or political manner," and for the purpose of "deny[ing] students access to ideas with which" the state or school district disagrees. *Id.* at 870-71.  This right is likewise violated when books are removed for reasons other than legitimate pedagogical concerns.  As explained above, that is what has occurred, and will continue to occur, in Urbandale, Norwalk, and other Iowa school districts as a result of Senate File 496.

157.     Scott Bonz wants his child Hailie, a student in Urbandale, to be able to check out and read from Hailie's school or classroom libraries books that have been targeted for removal or removed due to Senate File 496, including *Looking for Alaska*, *The Color Purple*, and *The Handmaid's Tale*.  Scott also wants Hailie to be able to possess, read, and discuss such books in school without incurring the stigma associated with having, reading, or discussing books that have been falsely branded as "pornographic" or otherwise inappropriate due to Senate File 496, including Urbandale's policy and custom implementing Senate File 496.

158.     Hailie likewise wants to be able to check out and read from her school or classroom libraries books that have been targeted for removal or removed due to Senate File 496, including *Looking for Alaska*, *The Color Purple*, and *The Handmaid's Tale*.  Hailie also wants to be able to possess, read, and discuss such books in school without incurring the stigma associated with having, reading, or discussing books that have been falsely branded as "pornographic" or otherwise

inappropriate due to Senate File 496, including Urbandale's policy and custom implementing Senate File 496.

159.    Hailie intended to check out these books from her school or classroom libraries this school year, but she has been unable to do so as a result of Senate File 496, including Urbandale's policy and custom implementing Senate File 496.

160.    The unlawful conduct of Defendants has injured the rights of Hailie and other students attending school in Iowa school districts to access information and ideas within school and classroom libraries.  It has also stigmatized other students as it has stigmatized Hailie

### COUNT III – ALL PLAINTIFFS AGAINST ALL DEFENDANTS
### First And Fourteenth Amendments, Void For Vagueness
### (Age-Appropriate Standard)

161.    Paragraphs 1 – 144 are incorporated by reference as if fully set forth herein.

162.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution prohibits statutes that are so impermissibly vague that an ordinary person would not understand what conduct the statute regulates or that are so standardless as to invite arbitrary enforcement. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  This prohibition is vigorously enforced when protected First Amendment conduct is involved.  *Id.*

163.    The Age-Appropriate Standard includes terms that are vague, indefinite, arbitrary, and subject to different meanings such that they fail to provide educators with adequate notice of their obligations in violation of the First and Fourteenth Amendments to the U.S. Constitution. Urbandale's and Norwalk's policies and customs implementing the Age-Appropriate Standard are also vague, indefinite, and arbitrary such that they fail to provide adequate notice of what they require in violation of the First and Fourteenth Amendments to the U.S. Constitution.

164.    In particular, the term "description" is vague and confusing in that it provides no guidance as to what types of statements regarding sex acts constitute a violation of the Age-Appropriate Standard.

165.    The Proposed Rules also do not help determine what statements constitute a "description" of a sex act.

166.    In addition, it is unclear whether the term "library program" encompasses books contained in classroom collections and, therefore, whether such books are subject to the Age-Appropriate Standard.

167.    The Educator Plaintiffs, as well as other Iowa educators, must decide whether to remove books that may violate the Age-Appropriate Standard, including Urbandale's and Norwalk's policies and customs implementing it, or to subject themselves and their districts to penalties for refusing to do so.

168.    As a result of this vagueness, constitutionally protected materials are and will be suppressed and chilled, injuring Plaintiffs and others.

**COUNT IV – AUTHOR PLAINTIFFS AND PRH
AGAINST THE STATE DEFENDANTS AND NORWALK
First Amendment, Unreasonable Content-Based Restriction And Overbreadth
(Identity And Orientation Prohibition)**

169.    Paragraphs 1 – 144 are incorporated by reference as if fully set forth herein.

170.    School libraries and classroom collections within Urbandale, Norwalk, and other Iowa school districts are, at a minimum, nonpublic forums.  In nonpublic forums, states cannot impose restrictions on speech that are unreasonable in light of the forum's purpose.  *Minnesota Voters All.*, 138 S. Ct. at 1888.

171.    The Identity And Orientation Prohibition is a content-based restriction because it regulates the availability of books in a school library based on "the topic discussed, or the idea or

message expressed." *Reed*, 576 U.S. at 163.  The statute restricts books that discuss or express ideas that "relate" to gender identity and sexual orientation.

172.    The Identity And Orientation Prohibition, including Norwalk's policy and custom implementing it, violates the First and Fourteenth Amendments to the U.S. Constitution on its face because it is not reasonable in light of the purpose of school libraries and classroom collections. The definitions of "gender identity" and "sexual orientation" and term "relating to" could encompass any books with a mention of gender identity, a heterosexual or LGBTQ+ person, or a heterosexual or LGBTQ+ relationship.

173.    The Proposed Rules do not limit the Identity And Orientation Prohibition because the term "neutral statement" is vague and unclear as it relates to the Identity And Orientation Prohibition.  Proposed Rules, Item 5 (amending Iowa Admin. Code r. 281-12.3(15)).

174.    For these reasons, the Identity And Orientation Prohibition is also overbroad.

175.    The Identity And Orientation Prohibition, including Norwalk's policy and custom implementing it, violates the First and Fourteenth Amendments to the U.S. Constitution as to the Author Plaintiffs and PRH because it interferes with their ability to make their books available to whom they desire and to distribute constitutionally protected works.

176.    The Identity And Orientation Prohibition, including Norwalk's policy and custom implementing it, violates the First and Fourteenth Amendments to the U.S. Constitution as to the Educator Plaintiffs because it forces them to decide whether to remove books that may violate the Identity And Orientation Prohibition or to subject themselves and their districts to penalties for refusing to do so.

**COUNT V – AUTHOR PLAINTIFFS, PRH, AND EDUCATOR PLAINTIFFS**
**AGAINST THE STATE DEFENDANTS AND NORWALK**
**First Amendment, Viewpoint Discrimination As Applied**
**(Identity And Orientation Prohibition)**

177.    Paragraphs 1 – 144 are incorporated by reference as if fully set forth herein.

178.    Viewpoint discrimination is an egregious form of content discrimination.  The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.  *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

179.    School libraries and classroom collections constitute, at a minimum, nonpublic forums.  Because they are nonpublic forums, state actors cannot require the removal of an author's or publisher's book from school libraries or classroom collections based on viewpoint discrimination.

180.    As set forth above, the Identity And Orientation Prohibition is meant to be applied in a discriminatory fashion.  The books that have been removed, or targeted for removal, under the Identity And Orientation Prohibition, including pursuant to Norwalk's policy and custom implementing it, are books that explore LGBTQ+ themes or portray LGBTQ+ characters, despite the fact that the prohibition applies to any books relating to sexual orientation or gender identity.

181.    This focus shows that books are being targeted based on the viewpoint they express.

182.    As a result of this viewpoint discrimination, books that address LGBTQ+ themes or portray LGBTQ+ characters are being removed and stigmatized in Iowa school districts, including books that are authored and published by the Author Plaintiffs and PRH, and others.

183.    The Educator Plaintiffs, as well as other Iowa educators, must decide whether to remove books based on this viewpoint discrimination or to subject themselves and their districts to penalties for refusing to do so.

{02109053.DOCX}

184.     As a further result of this viewpoint discrimination, LGBTQ+ students are being denied access to books that reflect their identities and experiences by the State Defendants and Norwalk.

185.     Such conduct violates the First Amendment by restricting constitutionally protected content in a discriminatory manner.

**COUNT VI – AUTHOR PLAINTIFFS, PRH, AND EDUCATOR PLAINTIFFS**
**AGAINST THE STATE DEFENDANTS AND NORWALK**
**Fourteenth Amendment, Violation of the Equal Protection Clause As Applied**
**(Identity And Orientation Prohibition)**

186.     Paragraphs 1 – 144 and 177 – 185 are incorporated by reference as if fully set forth herein.

187.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution constrains the ability of state actors from discriminating on the basis of gender identity or sexual orientation.  This includes taking official action motivated by discriminatory animus based on gender identity or sexual orientation.

188.     As set forth above, the Identity And Orientation Prohibition is meant to be applied in a discriminatory fashion because if it were applied to programs or promotions that related to all discussions of gender identity and sexual orientation, including heteronormative identities and orientations, nearly the entire cannon of Western literature would be prohibited in Iowa school libraries and classroom collections.

189.     And in fact, the books that have been removed or targeted for removal under the Identity And Orientation Prohibition, including pursuant to Norwalk's policy and custom implementing it, are books that are authored by LGBTQ+ authors or that explore LGBTQ+ themes or portray LGBTQ+ characters, despite the fact that the prohibition facially applies to any books relating to sexual orientation or gender identity.

190.     This focus is evidence that school districts, such as Norwalk, are targeting books and/or authors based on prohibited animus and have implemented a policy and custom of doing so.

191.     As a result of this discriminatory animus, LGBTQ+ authors are having their books removed or restricted on discriminatory grounds, and books that address LGBTQ+ themes or portray LGBTQ+ characters are being removed and stigmatized in Iowa school districts, including books that are authored and published by the Author Plaintiffs and PRH, and others.

192.     The Educator Plaintiffs, as well as other Iowa educators, must decide whether to remove books based on discriminatory grounds or to subject themselves and their districts to penalties for refusing to do so.

193.     As a further result of this discriminatory animus, LGBTQ+ students are being denied access to books that reflect their identities and experiences on discriminatory grounds by the State Defendants and Norwalk.

194.     Such conduct violates the Equal Protection Clause of the Fourteenth Amendment.

**COUNT VII – AUTHOR PLAINTIFFS, PRH, AND EDUCATOR PLAINTIFFS
AGAINST THE STATE DEFENDANTS AND NORWALK
First And Fourteenth Amendments, Void For Vagueness
(Identity And Orientation Prohibition)**

195.     Paragraphs 1 – 144 are incorporated by reference as if fully set forth herein.

196.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution prohibits statutes that are so impermissibly vague that an ordinary person would not understand what conduct the statute regulates or that are so standardless as to invite arbitrary enforcement. *Fox Television Stations, Inc.*, 567 U.S. at 253.   This prohibition is vigorously enforced when protected First Amendment conduct is involved.   *Id.*

197.    The Identity And Orientation Prohibition includes terms that are vague, indefinite, arbitrary, and subject to different meanings such that they fail to provide educators with adequate notice of their obligations in violation of the First and Fourteenth Amendments to the U.S. Constitution.

198.    In particular, the phrase "relating to gender identity and sexual orientation" as used in the statute is unconstitutionally vague.  The term "relating to" is too broad and indefinite to provide adequate notice of what constitutes a violation of the statute.  As discussed above, the definitions of "gender identity" and "sexual orientation" are so broad that they could apply, on their face, to any gender identity or to any type of marriage or romantic relationship.

199.    Furthermore, the term "program" is not defined, and it is unclear whether the Identity And Orientation Prohibition applies to school libraries or classroom collections.

200.    It is also unclear whether the Identity And Orientation Prohibition falls under the determination of whether a book is "age-appropriate" and falls under the same penalty regime as the Age-Appropriate Standard or some other penalty regime.

201.    Furthermore, Norwalk's policy and custom of implementing the Identity And Orientation Prohibition is indefinite and arbitrary in that it does not relate to the text of the Identity And Orientation Prohibition.  Therefore, Norwalk's policy and custom regarding the Identity And Orientation Prohibition also fails to provide educators with adequate notice of their obligations in violation of the First and Fourteenth Amendments to the U.S. Constitution.

## **IRREPARABLE HARM**

202.    There is no adequate remedy at law for these violations of Plaintiffs' constitutional rights.  Unless the requested injunctive and declaratory relief is granted, Plaintiffs and their members will suffer immediate and irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

A.      Setting this matter for hearing on the requested preliminary injunctive relief at the earliest practical date;

B.      Entering a preliminary and permanent injunction enjoining the Defendants, and each of them, and the Defendants' agents, attorneys, servants, employees, and other representatives, from enforcing the Age-Appropriate Standard and the Identity And Orientation Prohibition in any manner whatsoever;

C.      Entering a declaratory judgment that the Age-Appropriate Standard and the Identity And Orientation Prohibition are unconstitutional, void, and of no effect;

D.      Awarding Plaintiffs the costs of this action;

E.      Awarding Plaintiffs their reasonable attorneys' fees and other expenses pursuant to 42 U.S.C. § 1988; and

F.      Granting such other relief as the Court deems just and proper.

Dated:  March 29, 2024.

THE WEINHARDT LAW FIRM

By: /s/   Mark E. Weinhardt
     Mark E. Weinhardt    AT0008280
     Todd M. Lantz    AT0010162
     Jason R. Smith    AT0014862
     2600 Grand Avenue, Suite 450
     Des Moines, Iowa 50312
     Telephone: (515) 244-3100
     mweinhardt@weinhardtlaw.com
     tlantz@weinhardtlaw.com
     jsmith@weinhardtlaw.com

     Frederick J. Sperling
     Adam J. Diederich
     Kirstie Brenson
     Meera Gorjala
     ArentFox Schiff LLP
     233 South Wacker Drive, Suite 7100
     Chicago, Illinois 60606
     Telephone: (312) 258-5500
     frederick.sperling@afslaw.com
     adam.diederich@afslaw.com
     kirstie.brenson@afslaw.com
     meera.gorjala@afslaw.com
     (admitted *pro hac vice*)

     *Attorneys for Plaintiffs*

     Christy A.A. Hickman    AT0000518
     Becky S. Knutson    AT0004225
     Katherine E. Schoolen    AT0010031
     Iowa State Education Association
     777 Third Street
     Des Moines, Iowa 50309
     Telephone: (515) 471-8004
     Christy.Hickman@isea.org
     Becky.Knutson@isea.org
     Katie.Schoolen@isea.org

     *Attorneys for the Educator Plaintiffs*

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy all attorneys of record on March 29, 2024 via CM/ECF.

By:  /s/  Maura McNally-Cavanagh