**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| PENGUIN RANDOM HOUSE LLC, LAURIE HALSE ANDERSON, JOHN GREEN, MALINDA LO, JODI PICOULT, SCOTT BONZ as parent and next friend of HAILIE BONZ, IOWA STATE EDUCATION ASSOCIATION, MARI BUTLER ABRY, ALYSON BROWDER, AND DANIEL GUTMANN, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | Case No. 4:23-cv-00478-SHL-SBJ |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | |
| JOHN ROBBINS in his official capacity as President of the Iowa State Board of Education, MCKENZIE SNOW in her official capacity as Director of the Iowa State Department of Education, CHAD JANZEN in his official capacity as Chair of the Iowa State Board of Educational Examiners, URBANDALE COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS, ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent, NORWALK COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS, AND SHAWN HOLLOWAY, in his official capacity as Norwalk Community School District Superintendent, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PLAINTIFFS' RESISTANCE TO SCHOOL DISTRICT DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| Defendants. | )<br>) | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 5

I.  THE AMENDED COMPLAINT STATES CLAIMS AGAINST THE
SCHOOL DISTRICT DEFENDANTS ................................................................ 5

A.  The School District Defendants' Policies And Customs Cause
Distinct Harm To Plaintiffs. ...................................................................... 6

1.  The Amended Complaint Identifies The Policies And
Customs That The School District Defendants Implemented
Concerning The Book-Removal Provisions. ................................. 6

2.  The School District Defendants' Policies And Customs
Caused And Are The Moving Forces Behind Some Of The
Injuries Suffered By Plaintiffs. ...................................................... 8

B.  The School District Defendants Cannot Justify Their Injurious
Actions By Hiding Behind State Law. ...................................................... 11

II.  THE SUPERINTENDENTS ARE NOT DUPLICATIVE OF THE
SCHOOL DISTRICT ENTITIES. ..................................................................... 14

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.H. v. St. Louis Cty., Mo.*,
891 F.3d 721 (8th Cir. 2018) .................................................................................. 6

*Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*,
788 F. Supp. 2d 950 (D. Minn. 2011) ................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................. 5

*Bethesda Lutheran Homes & Services, Inc. v. Leean*,
154 F.3d 716 (7th Cir. 1998) ............................................................................... 13

*Bethesda Lutheran Homes and Servs., Inc. v. Born*,
238 F.3d 853 (7th Cir. 2001) ............................................................................... 13

*Board of Supervisors of Linn County v. Department of Revenue*,
263 N.W.2d 227 (Iowa 1978) ............................................................................... 14

*Cooper v. Dillon*,
403 F.3d 1208 (11th Cir. 2005) ........................................................................... 12

*Dakota Rural Action v. Noem*,
Civ. 19-5026, 2019 WL 4546908 (D.S.D. Sept. 18, 2019)..................................... 14

*Evers v. Custer County*,
745 F.2d 1196 (9th Cir. 1984) ............................................................................. 13

*Fayetteville Pub. Libr. v. Crawford Cnty., Arkansas*,
No. 5:23-CV-05086, 2023 WL 4849849 (W.D. Ark. July 29, 2023)..................... 16

*Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*,
901 F.2d 642 (8th Cir. 1990)................................................................................... 6

*Michigan v. DeFillippo*,
443 U.S. 31 (1979).................................................................................................. 13

*Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs, Minnesota*,
650 F. Supp. 3d 690 (D. Minn. 2023) ................................................................... 15

*Missouri Broadcasters Ass'n v. Lacy*,
846 F.3d 295 (8th Cir. 2017)................................................................................... 5

*Monell v. Dep't of Social Servs.*,
436 U.S. 658 (1978).............................................................................................6, 11

*N.N. ex rel S.S. v. Madison Metropolitan School District*,
670 F. Supp. 2d 927 (W.D. Wis. 2009) ............................................................ 12, 13

*Owen v. City of Independence, Mo.*,
445 U.S. 622 (1980)............................................................................................... 12

*Slaven v. Engstrom*,
   710 F.3d 772 (8th Cir. 2013) ................................................................... 13

*Slaven v. Engstrom*,
   848 F. Supp. 2d 994 (D. Minn. 2012) ...................................................... 13

*Smith v. South Dakota*,
   No. CIV. 11-4001-KES, 2012 WL 1038629 (D.S.D. Mar. 27, 2012) ..................... 13

*United States v. Stevens*,
   559 U.S. 460 (2010) ................................................................................11

## Statutes

42 U.S.C. § 1983 .................................................................................. 1, 6

Iowa Code § 279.15 ................................................................................. 9

Iowa Code § 279.16 ................................................................................. 9

Iowa Code § 279.27 ................................................................................. 9

Iowa Code § 284.3 .................................................................................. 9

## Other Authorities

Iowa Admin. Code r. 281—83.3 ................................................................. 9

Iowa Admin. Code r. 282—25.3 ................................................................. 9

## Rules

Federal Rule of Civil Procedure 12(b)(6) ................................................... 5

## INTRODUCTION

Plaintiffs' Amended Complaint alleges facts identifying unconstitutional policies and customs that have been adopted by Defendants Urbandale Community School District Superintendent Rosalie Daca and the Urbandale Community School District Board of Directors (collectively, "Urbandale") and Norwalk Community School District Superintendent Shawn Holloway and the Norwalk Community School District Board of Directors (collectively, "Norwalk," and with Urbandale, the "School District Defendants").[1]  Those allegations state claims against the School District Defendants under 42 U.S.C. § 1983.[2]  The School District Defendants, in their Motion To Dismiss, totally ignore those allegations.

At no point do the School District Defendants even attempt to argue that Senate File 496 ("SF496") or their policies and customs relating to that law are constitutional.  Instead they assert that their policies and customs are mandated by SF496 or excused by the fact that other Iowa school districts also removed books from school libraries following the enactment of SF496. (Brief at 6-8.)  But they are wrong.  It is possible both for a state law to be unconstitutional and for a municipality's policies and customs relating to that law to be unconstitutional for additional reasons.  That is exactly what the Amended Complaint alleges.

---

[1] Defendants Daca and Holloway are collectively referred to herein as the "Superintendents."

[2] The School District Defendants' Motion To Dismiss concerns all of the counts of Plaintiffs' Amended Complaint.  Counts I and III of Plaintiffs' Amended Complaint are brought against all of the School District Defendants.  Count II of Plaintiffs' Amended Complaint is brought against Defendants Urbandale Community School District Superintendent Rosalie Daca and the Urbandale Community School District Board of Directors.  Counts IV, V, VI, and VII are brought against Defendants Norwalk Community School District Superintendent Shawn Holloway and the Norwalk Community School District Board of Directors.

The School District Defendants do not substantively engage with Plaintiffs' Amended Complaint. They entirely disregard the fact that the Amended Complaint alleges specific facts regarding their policies and customs that have resulted in the removal of school library books— including that the Amended Complaint specifically identifies their written policies as their published book removal lists. They also disregard their own admissions, set forth in the Amended Complaint, that they made affirmative policy choices that resulted in the removal of school library books. And they entirely ignore the unique enforcement power that Iowa law and their own policies give to the Superintendents. The Amended Complaint states claims against the School District Defendants. This Court should deny the School District Defendants' Motion.

## FACTUAL BACKGROUND

Plaintiffs' claims against the School District Defendants concern their policies and customs that have resulted in their removal of constitutionally protected books from school and classroom libraries. The School District Defendants would have this Court believe that they played no active role in the removal of those library books—that their actions were dictated by the State. That is not true. While SF496 tasks school boards and superintendents such as the School District Defendants with implementing its book-removal provisions, the State has provided them no guidance concerning how to do so, even despite requests from educators. (Am. Compl. ¶¶ 126, 129, 130.) The School District Defendants filled this gap with their own policies and customs.

In May 2023, the State of Iowa enacted SF496. (*Id.* ¶ 52.) Under SF496, school districts are responsible for implementing two vague provisions that require the removal of books from school and classroom libraries (the "book-removal provisions"): the Age-Appropriate Standard and the Identity And Orientation Prohibition. (*Id.* ¶¶ 40, 41.) The Age-Appropriate Standard provides for the removal of "any material with descriptions or visual depictions of a sex act" for

kindergarten through twelfth grade students but does not define the term "descriptions" in relation to "a sex act" nor provide any easily understood line as to what types of statements constitute a description of a sex act.  (*Id*. ¶¶ 55, 59, 67-69.)  The Identity And Orientation Prohibition requires the removal of library books that relate to "gender identity" or "sexual orientation" for kindergarten through sixth grade students.  (*Id*. ¶¶ 70, 73.)  SF496 defines both "gender identity" and "sexual orientation" broadly and neutrally and provides no limiting principle for what types of materials "relat[e]" to gender identity or sexual orientation.  (*Id*. ¶¶ 72-74.)

Rather than instruct the school districts how to implement the book-removal provisions, the Iowa Department of Education and the Iowa State Board of Education took the position that "each school district is required *to create their own policies and procedures* for book selection and reconsideration" in light of SF496.  (*Id*. ¶ 130 (emphasis added).)  The School District Defendants have done just that.  Both Urbandale and Norwalk created and implemented their own policies and customs regarding the book-removal provisions, including written policies in the form of the respective lists of books (the "Book Removal Lists") that they chose to remove from school and classroom libraries following enactment of SF496.  (*Id*. ¶¶ 90, 112.)  And Urbandale's and Norwalk's preexisting policies provide the Superintendents with discretionary authority related to implementing their districts' policies and customs, including those at issue in this case.  (*Id*. ¶¶ 37, 39.)

Urbandale's policy and custom implementing the Age-Appropriate Standard reflects its deliberate choice to "take a fairly broad interpretation of the law" and to "err[] on the side of censorship."  (*Id*. ¶¶ 133, 134.)  Urbandale's policies and customs implementing the Identity And Orientation Prohibition have evolved over time.  At first, Urbandale developed a list of approximately 400 books that it would require be removed from school and classroom libraries,

including books to be removed under the Identity And Orientation Prohibition.  (*Id*. ¶ 90.)
Following intense pushback from its employees and community residents, it changed its policy
and chose not to remove books pursuant to the Identity And Orientation Prohibition.  (*Id*. ¶ 91.)

In contrast, Norwalk decided to apply the Identity And Orientation Prohibition to require
the removal of certain school and classroom library books.  (*Id*. ¶ 112.)  Norwalk's policies and
customs implementing the Prohibition reflect a choice to remove only books that relate to
transgender, nonbinary, and LGBTQ+ orientation and not to remove books that discuss
heteronormative gender roles and identities, despite the Prohibition's facially neutral statutory
language.  (*Id*. ¶ 116.)

Other Iowa school districts developed policies and customs relating to SF496's book-
removal provisions.  Those policies differ broadly from district to district and have resulted in
differing determinations as to which school library books to remove from shelves.  (*Id*. ¶ 118.)  As
noted, Urbandale's and Norwalk's Book Removal Lists differ meaningfully.  (*Compare id*. ¶¶ 93-
94 *with* ¶¶ 112-113.)

Urbandale's and Norwalk's policies and customs related to SF496 injured and, absent a
permanent injunction, will continue to injure Plaintiffs.  Both Urbandale and Norwalk decided to
remove books published by Plaintiff Penguin Random House (albeit different books), and
Urbandale decided to remove books written by the Author Plaintiffs.  (*Id*. ¶¶ 93-94, 113.)
Urbandale also decided to remove at least three books that Plaintiff Hailie Bonz sought to borrow
from Urbandale libraries.  (*Id*. ¶ 26.)  Further, both Urbandale's and Norwalk's policies and
customs, unless permanently enjoined, threaten additional injury to educator members of Plaintiff
Iowa State Education Association.  In light of their districts' policies and customs, those members
had to make the impermissible choice between prohibiting students from accessing constitutionally

protected school library books and facing penalties including loss of licensure. (*Id*. ¶ 27.) Urbandale and Norwalk are responsible for their own policies and practices.

## LEGAL STANDARD

Courts deny motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) where the complaint pleads facts that state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To decide a motion to dismiss, the Court accepts "as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party." *Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d 295, 300 (8th Cir. 2017) (reversing the district court and holding that the plaintiffs' amended complaint stated a claim for violation of the plaintiffs' First Amendment rights) (quotations and citation omitted).

## ARGUMENT

## I.     The Amended Complaint States Claims Against The School District Defendants.

Contrary to the School District Defendants' contentions, the Amended Complaint alleges that the School District Defendants implemented policies and customs related to SF496 that resulted in the removal of constitutionally protected materials from school and classroom libraries and, therefore, that those policies and customs caused and, unless permanently enjoined, will continue to cause harm to Plaintiffs. The School District Defendants ignore those allegations and instead point to SF496 to attempt to excuse their actions. But they are not merely enforcing state law, as they suggest. Instead, they exercised discretion and made active choices in crafting their own policies and customs related to SF496. The School District Defendants cannot use an unconstitutional state law to justify their own additional injurious actions.

A.     **The School District Defendants' Policies And Customs Cause Distinct Harm To Plaintiffs.**

The Amended Complaint states claims against the School District Defendants for violations of the First and Fourteenth Amendments brought under 42 U.S.C. § 1983.  As the School District Defendants recognize, to state a claim against a municipal actor under Section 1983, a plaintiff must allege the existence of an official policy or custom of the municipal actor and that the policy or custom was the moving force behind the plaintiff's injury.  (Brief at 4 (citing *A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 728 (8th Cir. 2018).)  An "[o]fficial policy involves 'a deliberate choice to follow a course of action made from among various alternatives' by an official who has the final authority to establish governmental policy."  *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990).  Municipalities are also liable for their customs where there is a "pattern of persistent and widespread unconstitutional practices which became so permanent and well settled as to have the effect and force of law."  *Id.* at 646 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)) (quotations omitted).  Because Plaintiffs' Amended Complaint alleges specific policies and customs of the School District Defendants that caused or, unless permanently enjoined, will cause Plaintiffs' injuries, this Court should deny their motion.

1.     **The Amended Complaint Identifies The Policies And Customs That The School District Defendants Implemented Concerning The Book-Removal Provisions.**

The Amended Complaint alleges that Urbandale and Norwalk each developed policies and customs related to the book-removal provisions.  In fact, the Amended Complaint alleges specific details regarding the School District Defendants' written policies—their respective book removal lists—including details concerning which books the School District Defendants chose to remove from school library shelves.  (*See, e.g.*, Am. Compl. ¶¶ 93-94, 112-13, 141.)  The Amended

Complaint's detailed allegations are more than sufficient to state a claim against the School District Defendants.

The Amended Complaint also describes additional aspects of the School District Defendants' policies and customs, such as Urbandale's decision to remove more library books than otherwise would be required and Norwalk's choice to remove books in a discriminatory manner despite the facially neutral language of the Identity And Orientation Prohibition. (*Id*. ¶¶ 134, 144.) Contrary to the School District Defendants' assertion, these allegations demonstrate that the School District Defendants "made a separate policy choice other than what Senate File 496 requires." (Brief at 6.)  SF496 did not compel the School District Defendants to adopt the policies and customs that they adopted.  Nor did it compel Urbandale to err on the side of censorship or Norwalk to apply the Prohibition's facially neutral language to remove primarily books that relate to transgender, nonbinary, and LGBTQ+ orientation.

The School District Defendants ignore the allegations of their deliberate choices, focusing instead on language stating that they are responsible for implementing and enforcing SF496 and that SF496 requires the removal of school library books.  (*Id.* at 6.)  But the School District Defendants' policies and customs were not compelled by the State.  Iowa provided no guidance to its school districts concerning how to implement SF496 but instead took the position that school districts should adopt their own policies to implement the book-removal provisions.  (Am. Compl. ¶ 130.)  Moreover, the State Defendants have since stated that the School District Defendants removed more books than SF496 requires.  (*Id*. ¶ 143.)

An example of the School District Defendants' authority to make policy choices regarding SF496 is Urbandale's marked change in course regarding the Identity And Orientation Prohibition. Urbandale first adopted a policy applying the Prohibition to school and classroom libraries and

then, only after pushback from its employees and community members, decided not to apply the Prohibition to school and classroom libraries.  (*Id.* ¶¶ 90-91.)  If Urbandale were merely applying state law without making any independent policy decisions, it would not have had agency to determine for itself whether to remove library books under the Prohibition.

Urbandale's and Norwalk's policies and customs differ from each other's and from the policies and customs of other Iowa school districts, illustrating that there were various alternative policies and customs from which the School District Defendants could have chosen.  (*Compare id.* ¶¶ 93-94 (Urbandale Book Removal List) *with* ¶¶ 112-113 (Norwalk Book Removal List).  *See also id.* ¶ 118.)  In fact, there are countless alternatives from which the School District Defendants could have chosen in implementing the book-removal provisions due to the lack of guidance provided by the State.  Therefore, the book-removal lists produced by the School District Defendants required numerous choices from various alternatives, because Urbandale and Norwalk respectively chose which individual titles to remove from or to retain in their libraries.

> **2.    The School District Defendants' Policies And Customs Caused And Are The Moving Forces Behind Some Of The Injuries Suffered By Plaintiffs.**

The School District Defendants, through their policies and customs related to SF496, have caused and, were they not enjoined, would have continued to cause distinct constitutional injury to all of the Plaintiffs except the educators not in their districts.  The School District Defendants ignore these injuries, focusing their motion instead on other Plaintiffs.  (Brief at 8 (discussing Plaintiffs Mari Butler Abry and Daniel Gutmann).)  They seek to excuse the role that they played in harming Plaintiffs by pointing to the State and to "other Iowa school districts," which are also implementing the book-removal prohibition, and by claiming that Plaintiffs' facial challenges to SF496 nullify any harm that the School District Defendants caused to Plaintiffs.  In essence, the School District Defendants seek to distract this Court from their unconstitutional actions by

pointing fingers elsewhere.  But their policies and customs are the moving forces behind the some of the harms that Plaintiffs—other than the educators not in their districts—have suffered or will suffer.

PRH, the Author Plaintiffs, educator members of ISEA, and Hailie Bonz have all suffered harm as a result of the School District Defendants' policies and customs.  Urbandale and Norwalk chose to remove books published by PRH and written by the Author Plaintiffs as a result of their policies and customs implementing SF496.  (Am. Compl. ¶¶ 93-94, 112-13.)  Plaintiff Hailie Bonz planned to check out three books from the Urbandale library but was unable to do so because Urbandale had opted to remove those books following the enactment of SF496.  (*Id.* ¶ 26.)

Members of Plaintiff ISEA are employed by Urbandale and Norwalk and therefore will also suffer harm as a result of the School District Defendants' policies and customs absent a permanent injunction.  Under Iowa law, superintendents such as Daca and Holloway have authority to recommend that a teacher's employment be terminated for "just cause," which includes failure to comply with federal, state, and local laws applicable to the fulfillment of professional obligations.  (*Id.* ¶ 82 (referring to Iowa Code § 279.27(1)-(2) and Iowa Admin. Code r. 282—25.3).)  *See also* Iowa Code § 279.15(1)-(2)(a).  One such state law requires Iowa educators to fulfill "professional responsibilities established by the school district," including adherence to policies and procedures.  Iowa Code § 284.3; Iowa Admin. Code r. 281—83.3(8)(a)(1).  Following a superintendent's recommendation, the school board ultimately conducts a hearing and determines whether to terminate that educator's employment.  (Am. Compl. ¶ 82 (citing Iowa Code § 279.27(1)-(2)).)  *See also* Iowa Code § 279.16.  Pending that hearing and determination, the Superintendent is authorized to suspend the educator.  (*Id.*)  In other words, educators risk losing their employment at the hands of the School District Defendants if they do not comply with the

School District Defendants' policies and customs requiring the removal of constitutionally protected material from school libraries.

The School District Defendants contend that, because "other Iowa school districts" are "also taking steps to comply" with the book-removal provisions, their own policies and customs cannot have caused Plaintiffs' alleged injuries.  (Brief at 8.)  But the School District Defendants have caused distinct harm to most of the Plaintiffs through their policies and customs.  The fact that Plaintiffs brought suit against Urbandale and Norwalk and not other school districts at this time does not mean that Plaintiffs failed to state a claim against the School District Defendants.

The fact that some of Plaintiffs' claims are facial challenges to SF496 is also irrelevant to whether the Amended Complaint states claims against the School District Defendants.[3]  Contrary to the School District Defendants' assertions, the unconstitutionality of SF496 has no bearing on whether the School District Defendants separately violated the First and Fourteenth Amendments through their own policies and customs.  (*See infra* at Section I.B.)  Moreover, in the First Amendment context, plaintiffs are permitted to challenge the constitutionality of a statute on its face where the law prohibits a substantial amount of protected speech, regardless of whether all applications of the law are unconstitutional.  *United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (Roberts, J.) ("In the First Amendment context," the Court "recognizes a second type of facial

---

[3] Judicial estoppel has no application here.  There is nothing inconsistent with Plaintiffs' allegations that the book removal provisions of SF496 violate the Constitution and that the School District Defendants adopted their own policies resulting in the unconstitutional removal of books in addition to the books that the statute requires be removed.  Plaintiffs have consistently maintained that the School District Defendants adopted varying interpretations of SF496, which illustrates their discretion in implementing the law.  Defendant Urbandale, for example, announced its decision to err on the side of removing books.  (*See, e.g.*, Plaintiffs' Brief In Support Of Their Motion For Preliminary Injunction, ECF No. 29-1 at 29.) The School District Defendants cannot escape responsibility for their own policies and customs that violate the First and Fourteenth Amendments.

challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." (citation and quotations omitted)).  Therefore, Plaintiffs' facial challenges to the constitutionality of SF496 are consistent with their claims against the School District Defendants.[4]

Because the School District Defendants' policies and customs implementing SF496 caused or, absent a permanent injunction, will cause injury to Plaintiffs, the Court should deny the School District Defendants' motion to dismiss.

**B.     The School District Defendants Cannot Justify Their Injurious Actions By Hiding Behind State Law.**

The School District Defendants also contend that the Court should dismiss them because they cannot be sued for "implementation or compliance with mandatory state law," even where their implementation of that law constitutes a policy or custom that caused Plaintiffs' injuries. (Brief at 10.)  They are wrong.  Where, as here, a complaint alleges that a municipal policy or custom resulted in constitutional injury, defendants cannot claim that they are merely complying with state law.  *See Monell*, 436 U.S. at 694 (holding that municipal entities are responsible for constitutional injuries resulting from "the execution of a [municipality's] policy or custom"); *Owen v. City of Independence, Mo.*, 445 U.S. 622, 633, 650 (1980) (holding that municipalities are not protected from liability for even their "good-faith constitutional violations" where those violations result from their policies or customs).  *See also N.N. ex rel S.S. v. Madison Metropolitan School District*, 670 F. Supp. 2d 927, 928-29 (W.D. Wis. 2009) (suggesting that a school district could be

---

[4] The School District Defendants assert that because Plaintiffs' Prayer for Relief "seeks only injunctive and declaratory relief from and against the challenged provisions of Senate File 496," their policies and customs cannot have caused any of Plaintiffs' injuries.  (Brief at 9 n. 2.)  They ignore the facts that the counts directed against them specifically include their policies and customs (Am. Compl. ¶¶ 154, 159, 163, 167, 172, 175-76, 180, 189-190, 201) and that some of those counts are as-applied, not facial, challenges (*id*. at Counts V and VI).

held liable where it "tak[es] advantage of an ambiguous statute in order to justify its own unconstitutional actions"). None of the School District Defendants' cases suggests otherwise. Therefore, dismissal is improper and the Court need not consider this argument further.

Even in the absence of a municipal policy or custom, the School District Defendants cannot escape liability by hiding behind the unconstitutionality of SF496. In essence, the School District Defendants ask this Court to ignore the discretion they exercised in removing library books based on the theory that they can act with impunity if their actions relate to SF496. But they cite no binding authority that they can, instead relying on inapplicable cases. This Court should reject the School District Defendants' dangerous argument, which—if accepted—would immunize municipalities from suit for constitutional injuries that they cause whenever there is a related unconstitutional state law.

While the Eighth Circuit has yet to decide whether a municipality faces no consequences for enforcing an unconstitutional state law without more, that is not this case. The School District Defendants' policies and customs demonstrate that they are not merely enforcing SF496. Even if that were not so, the decisions of other courts of appeals do not support the position of the School District Defendants. The Eleventh Circuit has held that a municipal actor's decision to enforce an unconstitutional state statute "constituted a deprivation of rights sufficient for § 1983 liability." *Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005). In a case where the municipality promulgated and then enforced a policy that was authorized by state law, the Ninth Circuit held that the municipality was liable for the constitutional injury that it caused. *Evers v. Custer County*, 745 F.2d 1196, 1203-204 (9th Cir. 1984) ("It is difficult to imagine a case in which the act complained of more clearly implements or executes a [] decision officially adopted and promulgated by that body's officers" than one involving a written policy that was "an official

decision" of the municipality.  (quotations and citation omitted)).  Further, the Supreme Court has suggested that municipal actors may not be required to enforce a law that is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).

The School District Defendants ignore these cases in favor of inapplicable cases that provide little guidance to this Court:

- *Madison Metro.*, 670 F. Supp. 2d 927, concerned only claims for damages, and the school district had already stopped its implementation and enforcement of the statute at issue. *Id.* at 928-29, 933 (considering whether municipalities should "be required to pay damages for simply doing what they are told to do").  *See also Bethesda Lutheran Homes & Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) (concerning only claims for damages after the plaintiffs had already "asked for and obtained injunctive relief"); *Bethesda Lutheran Homes and Servs., Inc. v. Born*, 238 F.3d 853, 856 (7th Cir. 2001) (explaining that the prior appeal concerned only whether "a municipal government [can] be held liable in damages under section 1983 if it committed the acts of which the plaintiff complains under the compulsion of federal and state law").  Plaintiffs in this case seek injunctive relief from the School District Defendants, whose policies and customs cause constitutional injury to Plaintiffs in addition to that caused by SF496.

- *Smith v. South Dakota*, No. CIV. 11-4001-KES, 2012 WL 1038629 (D.S.D. Mar. 27, 2012), concerned a statute that removed discretion from the municipal actor. *Id.* at *2, 4.  In contrast, the overbroad, vague language of SF496 provides school districts with discretion regarding how to implement the book-removal provisions.

- *Slaven v. Engstrom*, 848 F. Supp. 2d 994 (D. Minn. 2012), concerned a lawsuit brought against individual municipal actors regarding a practice over which those actors had no control and which was held not to be unconstitutional. *Id.* at 1002, 1004.  On appeal, the Eighth Circuit affirmed, explaining that the court "need not decide whether a municipality may ever be liable for enforcing state law because, here, there is no evidence or even allegation" that the municipality "was enforcing state law." *Slaven v. Engstrom*, 710 F.3d 772, 781 n. 4 (8th Cir. 2013).  *See also Dakota Rural Action v. Noem*, Civ. 19-5026, 2019 WL 4546908, at *5-6 (D.S.D. Sept. 18, 2019) (same).  Here, state law grants the School District Defendants significant discretion over how to implement SF496, and Plaintiffs alleged that the School District Defendants' policies and customs relating to SF496 caused distinct constitutional injury to Plaintiffs.

The School District Defendants also assert that "Iowa school districts do not have standing to question whether to follow state law" (Brief at 8, 10), but that issue is not before this Court.

This is not a lawsuit brought by the School District Defendants against the State of Iowa.  Rather, Plaintiffs seek injunctive relief against the School District Defendants to prohibit them from acting on their own unconstitutional policies and customs.  Whether the School District Defendants themselves would have standing to sue Iowa over SF496 is irrelevant.

The authority that the School District Defendants cite in support of their misplaced standing argument does not support their position for other reasons.  In *Board of Supervisors of Linn County v. Department of Revenue*, the Iowa Supreme Court held only that municipalities could not seek an injunction against Iowa concerning a state law that required municipal actors to perform ministerial functions but "vested [them] with no relevant discretion whatsoever" nor imposed on them a "duty to interpret legislation."  263 N.W.2d 227, 234 (Iowa 1978).  In contrast, SF496 does not compel the School District Defendants to perform ministerial functions but instead provides them with discretion that they used to adopt their own policies and customs.  The Iowa Supreme Court also noted that states have permitted municipal actors to challenge state legislation where, as here, "the subject matter of the challenged statute is of particularly major public importance." *Id*. at 233.  The removal of thousands of books from Iowa schools in violation of the First Amendment is certainly of major public importance.  Iowa law does not support the School District Defendants' attempt to blame the State of Iowa for their own unconstitutional actions.

## II.     The Superintendents Are Not Duplicative Of The School District Entities.

Contrary to the School District Defendants' contentions, the Superintendents are not duplicative of their school boards and therefore they should not be dismissed.  The School Districts Defendants' argument that the Superintendents are redundant ignores the distinct implementation and enforcement responsibilities given to the Superintendents by Iowa law and district policy.

The Superintendents are not redundant and should not be dismissed because they play a central role in the implementation and enforcement of the book-removal provisions, including their districts' policies and customs related to those provisions.  District courts in this circuit have declined to find that municipal officials are redundant of their entities where (as here) the relief sought is injunctive or declaratory and where Plaintiffs allege that the officials are "primary actors" that play unique roles relevant to the subject of the claims.  *See Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs, Minnesota*, 650 F. Supp. 3d 690, 710-11 (D. Minn. 2023) (denying motion to dismiss individual municipal actors as redundant defendants where the plaintiff's claims sought "declaratory and injunctive relief that would most directly come from" the individual defendants and where the individual defendants were "primary actors" who played "unique roles" in implementing and enforcing a municipal policy); *Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 958–59 (D. Minn. 2011) (holding that claims against individual defendants in their official capacities are not redundant where Plaintiffs allege that those defendants have violated the law).  Courts also consider whether the individual defendants have "independent authority and discretion" with regard to the action Plaintiffs seek to enjoin.  *See Mille Lacs Band of Ojibwe*, 650 F. Supp. 3d. at 710 (explaining that municipal officers who "maintain independent authority and discretion" are not redundant of their government entities).

As set forth in the Amended Complaint, Iowa law and Urbandale's and Norwalk's policies provide the Superintendents with discretion and distinct powers to implement and enforce state laws such as the book-removal provisions of SF496.  Under Iowa law, Superintendents are responsible for ensuring that the educators in their districts comply with state laws such as SF496.  (Am. Compl. ¶ 82.)  That responsibility includes disciplining educators through interim

suspensions and recommendations for termination where the educators do not comply.  (*Id.*)  Those discretionary powers belong to Superintendents alone.

Further, Urbandale's and Norwalk's policies explicitly recognize the role that the Superintendents play in implementing and enforcing district policies.  (*Id.* ¶ 37 (explaining that Defendant Daca "shall be directly responsible for the execution of [Urbandale's] policies and for enforcement of all provisions of law relating to the operation of the schools"); ¶ 39 (explaining that Defendant Holloway has "the power to . . . decide all matters of administrative and supervisory detail in connection with the operation and maintenance of [Norwalk's] schools").)  Because there is "no dispute" that the Superintendents "will play a significant role in implementing and enforcing" SF496 and their district's related policies and customs, they are "proper Defendants." *See Fayetteville Pub. Libr. v. Crawford Cnty., Arkansas*, No. 5:23-CV-05086, 2023 WL 4849849, at *2 (W.D. Ark. July 29, 2023) (declining to dismiss municipal actor defendants who were tasked with implementing and enforcing the statute that the plaintiff sought to enjoin).  This Court should reject the Superintendents' argument for dismissal.

## CONCLUSION

For the foregoing reasons, the Court should deny the School District Defendants' Motion To Dismiss.

Dated:  May 10, 2024

THE WEINHARDT LAW FIRM

By: /s/ Mark E. Weinhardt

    Mark E. Weinhardt    AT0008280
    Todd M. Lantz    AT0010162
    Jason R. Smith    AT0014862
    2600 Grand Avenue, Suite 450
    Des Moines, Iowa 50312
    Telephone: (515) 244-3100
    mweinhardt@weinhardtlaw.com
    tlantz@weinhardtlaw.com
    jsmith@weinhardtlaw.com

    Frederick J. Sperling
    Adam J. Diederich
    Kirstie Brenson
    Meera Gorjala
    ArentFox Schiff LLP
    233 South Wacker Drive, Suite 7100
    Chicago, Illinois 60606
    Telephone: (312) 258-5500
    frederick.sperling@afslaw.com
    adam.diederich@afslaw.com
    kirstie.brenson@afslaw.com
    meera.gorjala@afslaw.com
    (admitted *pro hac vice*)

    *Attorneys for Plaintiffs*

    Christy A.A. Hickman    AT0000518
    Becky S. Knutson    AT0004225
    Katherine E. Schoolen    AT0010031
    Iowa State Education Association
    777 Third Street
    Des Moines, Iowa 50309
    Telephone: (515) 471-8004
    Christy.Hickman@isea.org
    Becky.Knutson@isea.org
    Katie.Schoolen@isea.org

    *Attorneys for the Educator Plaintiffs*

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy all attorneys of record on May 10, 2024 via CM/ECF.

By:  /s/  Maura McNally-Cavanagh