**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

PENGUIN RANDOM HOUSE LLC, HACHETTE BOOK GROUP, INC.; HARPERCOLLINS PUBLISHERS LLC; MACMILLAN PUBLISHING GROUP, LLC; SIMON & SCHUSTER, LLC; THE AUTHORS GUILD; LAURIE HALSE ANDERSON; JODI PICOULT; GRACE VAN GUNDY

*Plaintiffs*,

v.

JOHN ROBBINS in his official capacity as President of the Iowa State Board of Education, MCKENZIE SNOW in her official capacity as Director of the Iowa State Department of Education; CHAD JANZEN in his official capacity as Chair of the Iowa State Board of Educational Examiners; MARGARET YOUNG, JOSH VANRYSWYK, HANNAH HORTON, KATHERINE HOWSARE, RACHEL KENT, RODRIGO SANTIZO, and CARISSA WILLIAMS, in their official capacities as Members of the Urbandale Community School District Board of Directors; ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent; CAROL ECKELS, SAM MCKNIGHT, JAMIE BUFFINGTON, DENNIS CHEERS, and AMBER TATE, in their official capacities as Members of the East Union Community School District Board of Directors; JUSTIN JEFFS, in his official capacity as East Union Community School District Superintendent; MARTY CHITTY, TOM MAIER, TORI CARSRUD, LEANNE HARTER, and EMILY SCHAACK, in their official capacities as Members of the Nevada Community School District Board of Directors; STEVE GRAY, in his official capacity as Nevada Community School District Superintendent,

*Defendants*.

Case No. 4:23-cv-0478-SHL-SBJ

**SCHOOL DISTRICT DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

COME NOW the School District Defendants and, pursuant to Local Rule 7, submit the following Brief in support of their Motion to Dismiss Plaintiffs' Third Amended Complaint.

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... **3**

**II. ARGUMENT** .......... **5**

**A. The Third Complaint Fails to State a Claim Against the School District Defendants Because it Does Not Sufficiently Allege That a Policy or Custom of the School District Defendants Was the Moving Force Behind Plaintiffs' Injuries** .......... **5**

**B. The School District Defendants Are Not Liable to the Plaintiffs for following State Law** .......... **8**

**C. Count VII of the Third Amended Complaint Fails to State a Claim Because Plaintiff Van Gundy Did Not Have a First Amendment Right to Access the Challenged Book.** .......... **13**

**D. The Official-Capacity Claims Against the Individual School District Board Members Are Redundant** .......... **13**

**III. CONCLUSION** .......... **16**

## I. INTRODUCTION

Plaintiffs' Third Amended Complaint (the "Third Complaint") is a significant departure from its previous iterations. This case now challenges the constitutionality of removing nine specific books "pursuant to the Library Restriction" in Senate File 496. ECF No. 132 ¶ 4. The Third Complaint alleges the removal of the nine books from Iowa school libraries "under the Library Restriction" violates the First Amendment. ECF No. 132 ¶¶ 75, 77. The Third Complaint states "[t]his action concerns *solely* the removal of the Removed Books from the Urbandale, East Union, and Nevada Community School District high school libraries pursuant to the Library Restriction. This lawsuit does not concern any of the numerous other provisions of Senate File 496 or the countless other books that have been removed throughout Iowa under the Library Restriction." *Id.* ¶ 4 (emphasis added).[1] The Third Complaint identifies school districts as responsible for implementing and enforcing the Library Restriction and recognizes that "school districts and their educators are also subject to penalties for violating the Library Restriction." ECF No. 132 ¶¶ 44-45.

On December 20, 2023, the original School District Defendants, Urbandale Community School District and Norwalk Community School District ("Original School District Defendants"), named through their board members and superintendents ("Urbandale CSD" and "Norwalk CSD," respectively), filed a motion to dismiss Plaintiffs' original Complaint. *See* ECF Nos. 69, 69-1. In response, and without addressing the merits of the Original School District Defendants' arguments, Plaintiffs sought leave to file an Amended Complaint. *See* ECF Nos. 70–72 (reflecting the parties' respective positions on Plaintiffs' Motion for Leave to Amend). On March 29, 2024, the Court

[1] Previously, the Amended Complaint alleged "[t]his action *solely concerns* the portions of Senate File 496 that *require* the removal of books from school libraries and classroom collections in violation of the First and Fourteenth Amendments to the United States Constitution." ECF No. 74 ¶ 4 (emphasis added).

granted Plaintiffs' Motion for Leave to Amend, finding that "the dispositive issues raised by defendants as to alleged futility and application of the doctrine of judicial estoppel are beyond the scope of this Magistrate Judge's authority" and could be addressed by dispositive challenges after the filing of the amended complaint. ECF No. 73 at 4–5. The Court therefore granted Plaintiffs' Motion for Leave to Amend "as a procedural matter only." *Id.* at 5. On March 29, 2024, Plaintiffs filed an Amended Complaint that continued to name the Original School District Defendants. ECF No. 74. On April 12, 2024, the Original School District Defendants filed a Motion to Dismiss Amended Complaint. ECF No. 75. The Original School District Defendants' Motion to Dismiss Amended Complaint was fully briefed, but on May 29, 2024, the Court entered an Order Denying Without Prejudice the Original School District Defendants' Motions to Dismiss due to the Eighth Circuit order staying further proceedings pending appeal. ECF No. 80.

Following a second round of preliminary injunction motion practice and upon the second remand from the Eighth Circuit Court of Appeals, the Court granted Plaintiffs leave to file an amended complaint. ECF No. 128. On July 27, 2026, Plaintiffs filed the Third Complaint. ECF No. 132. In the Third Complaint, Plaintiffs dropped their claims against Norwalk CSD and added to this lawsuit two new school districts, East Union Community School District ("East Union CSD") and Nevada Community School District ("Nevada CSD") (collectively, with Urbandale CSD, the "School District Defendants"), named through their board members and superintendents. *Id.* The Third Complaint departs from its predecessor complaints by trying a different tactic—challenging only the removal of select books at three Iowa school districts rather than seeking to strike down the Library Restriction as a whole.[2] However, even taking the allegations in the Third

[2] The Third Complaint omits any mention of when the School District Defendants removed any book, and therefore the School District Defendants do not raise a statute of limitations argument in this Motion to Dismiss. However, all claims based on a book removal that occurred more than two years before July 27, 2026 are barred by Iowa's two-year statute of limitations applicable to Section 1983 claims.

Complaint as true, its claims fail at the outset against the School District Defendants. Accordingly, the School District Defendants move the Court for dismissal of the Third Complaint.

## II. ARGUMENT

The Third Complaint "fail[s] to state a claim upon which relief can be granted" because, accepting as true the factual allegations contained in the Third Complaint, it fails to adequately allege that a policy or custom of the School District Defendants was the moving force causing Plaintiffs' injuries. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Additionally, Counts VIII–X fail because the School District Defendants cannot be held liable for complying with state law; Count VII fails because Plaintiff Van Gundy does not have a right to receive specific books in the school library as a matter of law; and Plaintiffs' claims against individual School Board Members are duplicative of claims against the School District Superintendents and should be dismissed.

### A. The Third Complaint Fails to State a Claim Against the School District Defendants Because It Does Not Sufficiently Allege That a Policy or Custom of the School District Defendants Was the Moving Force Behind Plaintiffs' Injuries.

The Third Complaint fails to state a claim upon which relief can be granted against the School District Defendants because it does not allege that any policy or custom of the School District Defendants was the moving force behind Plaintiffs' injuries. All ten counts are brought pursuant to 42 U.S.C. § 1983. ECF No. 132 ¶ 9. A governmental entity in a Section 1983 action "can [only] be held liable if a constitutional violation resulted from a municipal policy or custom." *A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 728 (8th Cir. 2018); *see also Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a Section 1983 claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged constitutional deprivation); *see also Swallow v. Wojcik*, No: 20–

1839, 2020 WL 6156607, at *1 (8th Cir. July 8, 2020) (affirming dismissal where plaintiff "did not allege that the alleged [constitutional deprivation] was pursuant to a county policy or custom"); *McCroy v. Douglas Cty. Corrs. Ctr.*, 394 Fed. App'x 325, 326, 2010 WL 3583534, at *1 (8th Cir. 2010) (affirming dismissal for failure to state a claim where plaintiff "did not allege that his rights were violated as a result of any policy or custom of Douglas County").

Under the law, an "[o]fficial policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) (internal quotation omitted). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decision of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403–04 (1997). In other words, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs*, 520 U.S. at 404. Thus, the plaintiff in a Section 1983 claim must prove the municipality's policy or custom was the "moving force" behind the constitutional violation by showing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Marsh v. Phelps Cty.*, 902 F.3d 745, 752 (8th Cir. 2018).

Here, the Third Complaint alleges the moving force behind the alleged constitutional violations is Senate File 496 itself, not the independent actions of the School District Defendants

who have attempted to comply with the law. The Third Complaint alleges that "[a]s a result of the State Defendants' approach to enforcing the Library Restriction, Iowa school districts have removed books that fall outside the scope of the Library Restriction out of fear of being punished by the State Defendants for not enforcing it as broadly as the State Defendants want." ECF No. 132 ¶ 67. The Third Complaint further alleges that the School District Defendants removed the books identified in Counts I–VII because "[t]he State Defendants' threats to penalize Iowa educators" have led the school districts to "take[] the position that the Library Restriction requires [the districts] not to make the book available in its high school library." ECF No. 132 ¶¶ 163, 173, 183, 193, 203, 213, 224. For the books identified in Counts VIII–X, the Third Complaint alleges those books violate the Library Restriction and acknowledges that the removal of each book was "pursuant to the Library Restriction." ECF No. 132 ¶¶ 165, 175, 185, 195, 205, 215, 227, 236, 246.

The Third Complaint does not allege how or why Plaintiffs' injuries are attributable to any policy or custom of the respective School District Defendants, but rather alleges the moving force behind their alleged injuries is the law and "the State Defendants' approach to enforcing" the law. ECF No. 132 ¶ 67; *see Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); *see also Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) (explaining that a policy to enforce state law "simply cannot be sufficient to ground liability against a municipality"). The Third Complaint alleges the School District Defendants have taken "position[s]" on each book but in the same paragraphs identify SF 496 as the sole reason for these positions. ECF No. 132 ¶¶ 163, 173, 183, 193, 203, 213, 224, 233, 245, 254. This falls short of identifying an independent policy decision made by the School District Defendants. Even if the "position[s]" of the School District Defendants met this threshold, the Third Complaint alleges that they were merely an outgrowth of the moving force behind their alleged injuries: Senate File

496 and "the State Defendants' approach to enforcing" the law. ECF No. 132 ¶ 67. Therefore, the Third Complaint fails to plead facts showing that a policy or custom of the School District Defendants was the moving force of Plaintiffs' injuries.

Because the Third Complaint fails to sufficiently allege that a policy or custom of the School District Defendants was the moving force behind Plaintiffs' alleged injuries, it fails to state a claim under Section 1983 against the School District Defendants and dismissal is appropriate on the claims against the School District Defendants. *See Hopper v. City of Waterloo*, No. 22-CV-2031 CJW-KEM, 2023 WL 370608, at *5 (N.D. Iowa Jan. 6, 2023) (granting defendant's motion to dismiss on the basis that "plaintiff's complaint fails to state a claim because plaintiff has not alleged any facts which, if taken as true, would establish a municipal policy or custom caused the alleged violation of his constitutional rights").

### B. The School District Defendants Are Not Liable to Plaintiffs for Following State Law.

To the extent the Court finds that any portion of the Third Complaint adequately alleges facts that a policy or custom of the School District Defendants was the moving force behind Plaintiffs' alleged injuries, dismissal of Counts VIII-X is still appropriate. The Third Complaint alleges that the book removals challenged in Counts VIII-X contain material within the scope of the Library Restriction. ECF No. 132 ¶¶ 232, 243, 253. Accepting these allegations as true, the School District Defendants have no discretion to maintain these books in their library collections, and doing so would violate Iowa law and subject them to the penalties of Senate File 496. The School District Defendants cannot be liable for implementing or complying with mandatory state law.

Iowa school districts do not have standing to question whether to follow state law. *See Exira Comm. Sch. Dist. v. State*, 512 N.W.2d 787, 790 (Iowa 1994) ("The well-settled rule in Iowa

is that school districts, as political subdivisions of the state, lack standing to mount a constitutional attack against a state statute."). School districts are "creatures of the Legislature; they exist by reason of statutes enacted within the power of the Legislature" and are without "sound basis" to "question the laws of [their] being." *Bd. of Sup'rs of Linn Cty. v. Dept. of Rev.*, 263 N.W.2d 227, 232 (Iowa 1978). Iowa law is clear that municipal officials "are not clothed with judicial authority" and it "would be a dangerous practice" to permit municipal officials to "refuse to perform their duty on the ground that the commanding law is unconstitutional." *Id.* at 233. The flip side of that coin is that a school district ought not be held liable under Section 1983 when it is merely "implementing a state law directive; . . . not making its own policy choice . . . ." *N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 929 (W.D. Wis. 2009) (granting summary judgment to a school district where the school district was implementing state law requirements).

Although the Eighth Circuit Court of Appeals has not yet ruled directly on the issue, "[g]enerally, albeit with some distinctions, courts 'agree that municipalities and local governments cannot be liable under § 1983 for enforcing a state law when it is required to do so.'" *Smith v. S. Dakota*, No. CIV. 11-4001-KES, 2012 WL 1038629, at *4 (D.S.D. Mar. 27, 2012) (quoting *Slaven v. Engstrom*, Civ. No. 11–1632, 2012 WL 264212, at *6 (D. Minn. Jan. 30, 2012)). *Madison Metropolitan School District* is instructive. In that case, the district court analyzed a plaintiff's challenge to the defendant school district's implementation of Wisconsin state law. The law at issue required that school districts "reject any application for transfer into or out of the school district . . . if the transfer would increase racial imbalance in the school district." 670 F. Supp. 2d at 930 (quoting Wis. Stat. § 118.51(7)). The law also required school districts "to adopt a resolution 'specifying . . . the limitation on transfers into or out of the school board under [the statute].'" *Id.* (quoting Wis. Stat. § 118.51(7)). To comply with the statute's mandates, the defendant school

district created a definition for what constituted a "racial imbalance" within the school district. *Id.* The school district also created a definition for who was considered "minority students" and "nonminority students." *Id.* The school district then applied its definitions to grant or deny various transfer requests from students. *Id.* The plaintiff filed an application for transfer to a different school district, which the school district denied because permitting the transfer would impact racial imbalance within the district under the district's criteria, contrary to Wisconsin state law. *Id*. at 931.

The *Madison* district court tackled the question of "whether a municipality should be held accountable for implementing an unconstitutional state law or policy" and thoroughly summarized case law authority on this topic. *See id.* at 933–34. In summarizing the weight of authority, the district court recognized that "[w]hether it is framed as an issue of 'causation,' 'policy' or 'choice,' the question . . . is whether the municipality enforcing a state law has enough discretion in implementation to make the municipality 'responsible' for any constitutional violation that occurred." *Id.* at 936 (citing cases). In granting summary judgment to the school district, the *Madison* Court recognized that the school district "was not making its own policy choice about the use of race in making transfer decisions," but was instead "doing nothing more than implementing a state law directive," and therefore "plaintiff's constitutional injury was not caused by a policy of the school district." *Id*. at 929, 943.

Here, Counts VIII-X do not allege the School District Defendants have done anything other than "implement[] a state law directive." *Id.* at 929. Senate File 496 does not grant school districts discretion whether to comply, but rather mandates that a school district's library program "exclude any material with descriptions or visual depictions of a sex act." Furthermore, the Eighth Circuit's most recent opinion in this litigation emphasizes that applying the Library Restriction does not

involve "judgment calls" by school staff because "[t]he library restrictions are neither amorphous nor unreasonable." *Penguin Random House v. Robbins*, 172 F.4th 581, 588 (8th Cir. 2026). The Eighth Circuit's decision confirms that where materials violate the requirements of Senate File 496, school districts must remove them without exercising discretion.

Although the Eighth Circuit has not directly ruled on the "thorny question" of whether municipalities may ever be held liable for enforcing a state statute, the Eighth Circuit has dismissed claims against municipalities where the complaint lacked "allegations of an unconstitutional . . . policy separate and distinct from [state] law." *Slaven v. Engstrom*, 710 F.3d 772, 780 (8th Cir. 2013) (recognizing that the plaintiffs' complaint did not "challenge a particular policy that [the county] promulgated" where the complaint "essentially allege[d] that *Minnesota law*, and the state court judge's application of that law—not an independent Hennepin County policy" was the moving force behind any constitutional violation (emphasis in original)). Persuasive authority from the Seventh Circuit explains the sound basis for rejecting municipal liability based only on a municipality's enforcement of state law as follows:

> When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury. Apart from this rather formalistic point, our position has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government.

*Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); *see also Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law . . . such a 'policy' simply cannot be sufficient to ground liability against a municipality."). Furthermore, district courts within the Eighth Circuit have ruled that a municipality may not be

held liable under Section 1983 for enforcing state law. *See Slaven*, Civ. No. 11–1632, 2012 WL 264212, at *6 (citing cases); *Dakota Rural Action v. Noem*, Civ. 19-5026, 2019 WL 4546908, at *4–5 (D.S.D. Sept. 18, 2019) (dismissing the county official named in his official capacity because "[a] decision against the Governor and Attorney General will redress Plaintiffs' alleged injuries," and "Plaintiffs' injuries, as currently alleged, are not fairly traceable to" the county official where "Plaintiffs' allegations show only that a policy choice was made by State officials").

To hold the School District Defendants responsible for Plaintiffs' harms, Plaintiffs must establish a "direct causal link" between school district policy and the alleged violations and that the School District Defendants made a "deliberate choice . . . to follow a course of action . . . made from among various alternatives." *Noem*, Civ. 19-5026, 2019 WL 4546908, at *5 (citations omitted). The Third Complaint does not sufficiently plead any facts that support such a finding in Counts VIII-X. Instead, the Third Complaint alleges that the Library Restriction requires all Iowa school districts to remove *I Know Why the Caged Bird Sings*, *The Rape of Nanking*, and *Native Son* from school libraries because all three books contain passages within the scope of the Library Restriction:

- Count VIII states "[t]he Library Restriction requires Iowa school districts to remove *I Know Why the Caged Bird Sings* from their school libraries." ECF No. 132 ¶ 232.
- Count IX states "[t]he Library Restriction requires Iowa school districts to remove *The Rape of Nanking* from their school libraries." *Id.* ¶ 243.
- Count X states "[t]he Library Restriction requires Iowa school districts to remove *Native Son* from their school libraries." *Id.* ¶ 253.

The Third Complaint does not allege that the School District Defendants' removal of these three books resulted from school-district-level policy decisions. Instead, the Third Complaint

alleges these three books are required to be removed under the Library Restriction. Therefore, because Counts VIII-X allege the School District Defendants' action of removal of these books was required by mandatory state law, the Third Complaint fails to state a claim against the School District Defendants on these counts.

### C. Count VII of the Third Amended Complaint Fails to State a Claim Because Plaintiff Van Gundy Does Not Have a First Amendment Right to Access the Challenged Book.

Count VII of the Third Complaint fails because Plaintiff Grace Van Gundy does not have a right to access *Nineteen Minutes* through the school library. This Count relies on the assertion that "the removal of *Nineteen Minutes* from Urbandale's high school library pursuant to the Library Restriction violated Van Gundy's right to access information and ideas within school and classroom libraries under the Free Speech Clause of the First Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment." ECF No. 132 ¶ 227. That statement directly contradicts the Eighth Circuit's holding that "[t]he First Amendment does not guarantee students the right to access books of their choosing at taxpayer expense." *Penguin Random House*, 172 F.4th at 586.[3] The Third Complaint makes a cursory attempt to distinguish this holding from the present pleading because it was made in the context of an appeal of a preliminary injunction issued in response to a facial challenge. ECF No. 132 ¶ 23 n. 3. That distinction does not alter the result because the Eighth Circuit held that no such First Amended right exists. The Eighth Circuit ruled that Plaintiff Van Gundy has no First Amendment right to access specific books of her choosing

[3] There is a growing split of authority on the question of whether a First Amendment right to challenge the removal of books in a school library exists at all. *Compare Little v. Llano Cty.*, 138 F.4th 834, 850 (5th Cir. 2025) (en banc); *Parnell v. Sch. Bd. of Escambia Cty., Fla.*, 802 F. Supp. 3d 1361, 1365 (N.D. Fla. 2025); *with O.R. by and through Rogers v. Greenville Cty., S.C.*, 826 F. Supp. 3d 681, 700 (D.S.C. 2026). Additionally, with respect to the non-student Plaintiffs, it is not clear from the Third Complaint what First Amendment right they are purporting to invoke.

in a school library, so her claim against the Urbandale School District Defendants (Count VII) must fail as a matter of law.

### D. The Official-Capacity Claims Against the Individual School District Board Members Are Redundant.

Dismissal is also appropriate against individual members of the Urbandale, Nevada, and East Union School District Boards of Directors because these claims are duplicative of their claims against the superintendents of the same districts. Under Iowa law, school districts are bodies politic governed by their boards of directors, vested with the statutory authority to conduct the district's affairs. *See* Iowa Code §§ 274.1, 274.7. Superintendents are employed by boards of directors and "have such powers and duties as may be prescribed by rules adopted by the board or by law." Iowa Code § 279.20. The Third Complaint alleges each superintendent is responsible for interpreting and implementing laws relevant to education, including Senate File 496. ECF No. 132 ¶¶ 32, 37, 42.

Here, the real parties in interest are the governmental entities: the Urbandale Community School District, East Union Community School District, and Nevada Community School District. *See* Iowa Code § 274.1 (stating that a school district in Iowa "shall continue a body politic as a school corporation, unless changed as provided by law, and as such may sue and be sued, hold property, and exercise all the powers granted by law, and shall have exclusive jurisdiction in all school matters over the territory therein contained"); *see also Bd. of Dirs. of the Ind. Sch. Dist. of Waterloo v. Green*, 147 N.W.2d 854, 857 (Iowa 1967) ("The board of directors of each school district is its governing body."). Plaintiffs chose not to name the school districts as defendants, instead naming their superintendents in their official capacities. The effect is the same. Plaintiffs' claims against the superintendents in their official capacities are just claims against the school districts themselves. *See Doe ex rel. Doe v. Sch. Dist. of the City of Norfolk*, 340 F.3d 605, 609 n.3

(8th Cir. 2003) (noting with approval that the district court had dismissed a claim against a school administrator in his official capacity); *see also Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996) (affirming dismissal of claims against school board members and school administrators in their official capacities "because a suit against the official of the state is treated as a suit against the municipality").

"Suits against officers in their official capacities are merely suits against the officers' employer." *Luong v. House*, 4:21-CV-00214, 2023 WL 2890196, at *6 (S.D. Iowa Apr. 11, 2023). "It is proper for a court to dismiss, as duplicative or redundant, claims against an official sued in his official capacity that are also asserted against the official's governmental employer." *Bonenberger v. City of St. Louis*, 4:16CV00788 PLC, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016) (citing cases); *see also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (finding the district court correctly dismissed an official-capacity federal claim against a school official "as redundant to the claim against the [s]chool [d]istrict"); *Hotchkiss v. Cedar Rapids Comm. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487, at *10 (N.D. Iowa Sept. 21, 2023) (dismissing "plaintiff's official-capacity claims against the individual defendants [as] redundant and duplicative of the claims against the District"); *Creager v. Bd. of Educ. of Whitley Cty.*, 914 F. Supp. 1457, 1461 (E.D. Ky. 1996) (dismissing "unnecessary" official-capacity claims against individual members where the board was the real party in interest).

The Third Complaint's official-capacity claims against board members also ignore the important distinction between these members and the school board as an entity. A school board is a body politic that acts on its own behalf. Individual board members have no authority to make or enforce board policies. Considering these limitations on the individual board members' authority,

Plaintiffs have not alleged that the individual board members have "taken actions as individuals that violate the law." *Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 958 (D. Minn. 2011). Absent such an allegation, the claims against individual board members are entirely duplicative of the claims against the superintendents. *See id.* (summarizing cases that have held "a court may dismiss official-capacity claims against individuals when those claims are redundant because, for example, they are equivalent to the claims against the government entity.").

The claims against the three school district superintendents serve to make the School Districts the real parties in interest to this action. Plaintiffs' seventeen additional official-capacity claims against individual school board members are unnecessary, redundant, and ineffective because individual board members have no authority to act on behalf of the board on which they serve. Accordingly, Plaintiffs' official-capacity claims against the school board members should be dismissed.

## III. CONCLUSION

The Third Complaint, like each of the prior Complaints, challenges the constitutionality of an Iowa state law with which the School District Defendants are required to comply. The Third Complaint does not allege sufficient factual matter that a policy or custom of the School District Defendants was the moving force behind Plaintiffs' alleged injuries. Accordingly, Plaintiffs' claims against the School District Defendants should be dismissed. Counts VIII-X should be dismissed because Plaintiffs allege only that the School District Defendants removed books they were required by Iowa law to remove. Plaintiff Van Gundy's claim in Count VII should be dismissed because she has no First Amendment right to access a specific book in her school library.

Furthermore, Plaintiffs' claims against the individual school district board members are duplicative of their claims against the school district superintendents and should be dismissed.

WHEREFORE, the School District Defendants request the Court grant this Motion to Dismiss, dismiss Plaintiffs' claims against the School District Defendants, and grant such other relief as deemed appropriate.

/s/ Linday A. Vaught

Emily Kolbe (AT0012313)
Miriam D. Van Heukelem (AT0010074)
Lindsay A. Vaught (AT0010517)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309
(515) 243-7611
(515) 243–2149 (fax)
ekolbe@ahlerslaw.com
mvanheukelem@ahlerslaw.com
lvaught@ahlerslaw.com
**ATTORNEYS FOR SCHOOL DISTRICT DEFENDANTS**

Electronically filed and served.

4901-5275-6686-2\17071-1751

**CERTIFICATE OF SERVICE**

**The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings, on** ***September 28, 2026***

**By** ☐ **U.S. Mail** ☐ **Fax**
☐ **Hand Delivery** ☐ **Overnight Carrier**
☒ **Electronically through CM-ECF** ☐ **E-mail**
☐ **Electronically through Efile**

**Signature** /s/ Anne Stokely